FILED
2010 Jun-17  PM 04:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **MELVIN BRADLEY**<br>**and KEVIN A. CALMA**<br>**individually and on**<br>**behalf of all others similarly situated,**<br><br>   **Plaintiffs,**<br><br>**vs.**<br><br>**FRANKLIN COLLECTION SERVICE,**<br>**INC.**<br><br>   **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **CIVIL ACTION NO.:** _____<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

### Jury Trial Demanded

Plaintiffs Melvin Bradley ("Bradley") and Kevin A. Calma ("Calma"), individually and on behalf of similarly situated individuals, for their Complaint against Defendant Franklin Collection Service, Inc. ("Franklin"), alleges as follows:

### INTRODUCTION

1.      This civil class action is brought to recover damages stemming from illegal activities prohibited by the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1961, *et seq.*) ("RICO") and for activities prohibited by the Fair Debt Collection Practices Act (15 U.S.C. § 1692, *et seq.*) ("FDCPA"). This is also a civil action for conspiracy, fraud, unjust enrichment and declaratory and injunctive relief.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter and the Defendant in this case pursuant to the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1961, *et seq.*), specifically, 18 U.S.C. §§ 1964(a) and (c); and 28 U.S.C. § 1331, as those matters arise under the laws of the United States of America.  This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, because the state law claims are so related to the federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.  This Court also has jurisdiction over the subject matter and the Defendant in this case pursuant to the  Fair Debt Collection Practices Act (15 U.S.C. § 1692, *et seq.*), specifically pursuant to 15 U.S.C. § 1692k(d).

3.      This Court has *in personam* jurisdiction over the Defendant.

4.      Venue is proper, pursuant to 28 U.S.C. § 1391(b), in this District as a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred here, and is proper pursuant to 18 U.S.C. § 1965(a) because the Defendant transacted its affairs here.

## PARTIES

5.      Bradley is a natural person residing in Jackson County, Alabama.

6.      Calma is a natural person residing in Jefferson County, Alabama.

7.      Franklin is a foreign corporation, organized and existing under the laws of Mississippi, doing business in Alabama.  Franklin has been and is engaged in the business of collecting debts using the mails and telephone, and Franklin regularly attempts to collect debts alleged to be due another.  Franklin is a "debt collector" as defined by the FDCPA.  15 U.S.C. § 1692a(6).

8.    Plaintiffs bring this action against Franklin for themselves and on behalf of a class of similarly situated individuals defined as follows:

> All debtors who received collection notices from Franklin where the amount claimed to be due for collection purposes was larger than the actual bill from the original creditor, and who paid or agreed to pay any or all of the amount in excess of the original debt, for a period of four years prior to the commencement of this action. This class does not include any person who has been sued by the Defendant for charges or anyone who has paid less than the original debt. The class also does not include the Defendant or any officers or directors of the Defendant, the legal representatives, heirs, successors and assigns of the Defendant, and any judicial officer involved in this matter and their immediate family.

9.    Plaintiffs, the class members, and the Defendant are "persons" as defined in 18 U.S.C. § 1961(3).

## FACTS ILLUSTRATING FRANKLIN'S RICO AND FDCPA VIOLATIONS

### I.    THE ENTERPRISES

10.    There are two RICO enterprises involved in this case.  The common thread between both enterprises is Franklin.[1]

### A.    THE UAB ENTERPRISE

11.    The first enterprise damaged Calma specifically.  The following persons constituted the first enterprise, collectively referred to as the "UAB Enterprise":

- Franklin;

- UAB Medical West ("West");

- UAB Health System ("System");

---

[1]    Upon information and belief, Franklin engages in the behavior described in this Complaint with other creditors and not just the named members of the enterprises in this Complaint.

•      other unnamed UAB hospitals and creditors utilizing collection services from Franklin;

12.     The way the UAB Enterprise operated is as follows. West is a healthcare institution operating under the control of System. Upon information and belief, System manages healthcare delivery, charges, and billing for all UAB hospitals, including West. West would provide medical care to individuals and then bill the patients for the services implemented by West and System. When a patient was late on paying a bill, West and System used Franklin to collect the debt. Franklin is an agent for West and System.

13.     However, Franklin collects the debts in an illegal and unlawful way. Franklin collects amounts far in excess of the original debts without disclosing the nature and the extent of the additional charges. Franklin claims that the debt it is collecting is the actual debt, when it actually is the original debt plus a hidden mark-up for collection fees.

14.     Franklin conspires with West and System to take the original debt and add on an undisclosed mark-up. This way West and System receive either the full amount of the debt owed to them, or the full amount of the debt, plus this undisclosed mark-up. Franklin also benefits because it receives additional charges that it is not entitled to receive.

15.     The UAB Enterprise's scheme played out perfectly for it in Calma's case. On or about June 17, 2007, Calma's daughter received medical treatment from West. Calma's debt to West was $735. Calma also signed a contract with West, which on information and belief, stated, in part, as follows: "I agree that if this account is not paid when due, and if the hospital should retain an attorney or collection agency for collection, I agree to pay all costs of collection including interest, reasonable attorney's fee (even if suit is filed) and reasonable collection agency fees." (Copies of statements from West dated August 14, 2007 and September 25, 2007 attached as Exhibits A and

4

B).

16.     Calma thought the debt had been paid by his insurance company, however it was not. Calma received a letter from Franklin dated January 15, 2008.   Franklin, trying to pass off the amount it was trying to collect as the original debt, added $257.25 to the original debt.  This represented a whopping 35% mark-up from the original debt, far from the "reasonable collection agency fees" that Calma had agreed to.  Now Calma owed a total of $992.25.  The letter also stated that the letter was a "***NOTICE OF INTENT TO FILE CIVIL LAWSUIT***" and threatened Calma that he better pay or he would be subject to "incurring added expenses such as court cost, attorney fees and/or damages." (Letter dated January 15, 2008, attached as Exhibit C).

17.     Moreover, Franklin, in its dunning letters to Calma and other class members, makes false statements and assertions.  For example, Franklin's letter to Calma states: "Beware, the creditor listed below has authorized Franklin Collection Service, Inc. to file a civil lawsuit against you on their behalf to secure themselves from any further loss." (Exhibit C, emphasis added).  This is an overt misrepresentation by Franklin with respect to threatened additional loss on the part of the creditor (here West).  The debt being collected by Franklin does not and cannot lead to "further loss" on the part of West and such language in included to further threaten Calma and class members by suggesting the prospect of additional amounts being owed to West.

18.     Feeling threatened, Calma authorized Franklin to withdraw the entire amount that Franklin was demanding, including the 35% mark-up fee–$992.25.  Not only did Franklin withdraw the original debt plus the 35% mark-up, it also withdrew $10 more, from Calma's account, making a grand withdrawal total of $1002.25.  Calma believed Franklin was only authorized to withdraw $992.25 from his account.

19. In the end, members of the UAB Enterprise all won as the scheme operated exactly as planned, and the members profited from this unreasonable and undisclosed 35% mark-up (the invoice from Franklin in this case simply stated that the $992.25 was the balance due) and unauthorized $10 add-on.

## B. THE UROLOGY ENTERPRISE

20. The second enterprise worked similar to the first. Here, it directly damaged Bradley. The following persons constituted the second enterprise, collectively referred to as the "Urology Enterprise":

- Franklin;

- North Alabama Urology, P.C. ("Urology");

- other unnamed creditors utilizing collection services from Franklin;

21. Urology is a healthcare provider that also utilizes Franklin to collect unpaid debts. Similar to the UAB Enterprise, when a patient does not pay a debt, Urology sends Franklin to collect. Franklin then marks-up the debt by an unreasonable percentage, and then, specifically in Bradley's case, passes off the original debt plus the unreasonable collection fee as the original balance.

22. On April 20, 2009, Bradley completed a patient registration form, which stated, in part, as follows: "In the event of non-payment, either by insurance or myself, I agree to pay all costs of collection, including a reasonable attorney's fee in the event it is necessary to employ an attorney to enforce any provision of this contract." (Urology Patient Registration, attached at Exhibit D). On or about July 2, 2009, Bradley incurred a medical debt from Urology in the amount of $861.96 for medical services. (*See* statement from Urology with print date October 16, 2009, attached as Exhibit E). However, Bradley received a notice from Franklin dated December 11, 2009 stating that the

matter was turned over to Franklin for collections and also stated:

> Total Due All Creditor(s):     $1,155.02
> List of Creditor(s) You Owe:
> NORTH ALABAMA UROLOGY PC          1,155.02

(Letter dated December 11, 2009, attached as Exhibit F).

     23.     However, knowing that he did not owe Urology that amount, Bradley sent a letter to Franklin on January 6, 2010, stating that he did not owe Urology $1,155.02 and he also included a statement from Urology showing that he only owed $861.96. Bradley said he would pay this amount upon receiving a corrected statement from Franklin. (Letter dated January 6, 2010, attached as Exhibit G). Not to be deterred, Franklin responded. On January 8, 2010, in validating the debt, Franklin listed on a letter the following:

> ORIGINAL BALANCE     1155.02
>
> CURRENT BALANCE     1155.02

(Letter dated January 8, 2010, attached as Exhibit H). Once again, Franklin insisted on passing off the original debt plus this unreasonable mark-up as the original debt. Similar to the UAB Enterprise, Franklin also sent a letter threatening civil litigation to Bradley on January 12, 2010. (Letter dated January 12, 2010, attached as Exhibit I).

     24.     Franklin also twice referred to itself as "The Collection Firm of Franklin Collection Service, Inc." (Exhibits F and I). However, throughout documents obtained from the Alabama and Mississippi Secretary of State websites, Franklin is consistently named as Franklin Collection Service, Inc. (*See generally* Alabama Corporation Details - Annual Report, *available at* http://arc-sos.state.al.us/cgi/corpdetail.mbr/annual; *see also* State of Mississippi Secretary of State Corporate Annual Reports, *available at* http://business.sos.state.ms.us/corp/soskb/Corp.asp). Franklin is

undoubtedly trying to pass itself off as a law firm which, as will be shown below, is contrary to federal law.

25.     As was the case with the UAB enterprise, Urology utilized the service of Franklin, and Franklin, with full knowledge, approval and ratification by Urology, then engaged in this fraudulent, deceptive and illegal practice to collect the debt. All members of both enterprises win in the end at the expense of countless victims. With Franklin as the workhorse, the UAB entities and Urology dictated the methods by which contracts were prepared for patients with respect to collections; determined the utilization of collection agencies, and dictated directly or through delegation the methods by which Franklin collected the debts. Then it was time for Franklin to begin its scheme of passing off the unreasonably inflated debt as the original debt. All the UAB entities and Urology would have to do is sit back and watch the checks roll in based upon Franklin's tactics.

26.     These two enterprises (undoubtedly there are many more) were formed to coerce payments over and above what was rightfully and legally owed through unlawful add-on charges, and threatened civil litigation. The enterprises each represent a legal association as well as groups of individuals associated in fact.  18 U.S.C.  § 1961(4).  The enterprises are ongoing and the businesses involved in the enterprises have structures and existence separate and distinct from the enterprises and the pattern of racketeering alleged in this Complaint, along with conducting operations involved in interstate commerce.

27.     Further, these fees added by Franklin and ratified and approved by the UAB entities and Urology are an overt attempt to misrepresent the amount and character of the actual and original debt owed. As will be shown below, this is illegal according to the FDCPA. Simply put, RICO was designed to prevent "persons" from uniting and causing damage to other "persons" by using illegal

8

methods.  Not only do the enterprises misrepresent the character and amount of the debt, the mark-up is entirely unreasonable.   Specifically in Calma's case, he agreed to pay "reasonable collection agency fees."  35% is not reasonable, especially under the circumstances of this case.  The amount of collection costs does not vary based upon the amount of the debt.  It costs no more to collect a $100 debt than it does to collect a $1,000,000 debt.

## II.     THE PATTERN OF RACKETEERING AND THE PREDICATE ACTS

28.     Franklin has engaged in a pattern of racketeering by violating 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud).   Upon information and belief, this pattern of racketeering activity is not limited to these two enterprises and Franklin engages in the activity described in this Complaint with other creditors as well.

### A.     Mail and Wire Fraud

29.     As shown above by the letters attached as exhibits, Franklin and the enterprises have sent or received things by postal service, commercial carrier, wire, or other interstate electronic media, including, but not limited to:

- material containing false and fraudulent misrepresentations regarding the amount, character, and legal status of the debt being collected;

- material containing false and fraudulent misrepresentations concerning the alleged threat of civil litigation to collect the false debt; and,

- accepting of payments from Plaintiffs and class members including the unlawful overcharges.

- Franklin referring to itself as "The Collection Firm of Franklin Collection Service, Inc."  This had the effect of misleading Bradley into believing he was receiving communications from a law firm.

30.     There have been other matter and things sent through or received from the postal service, commercial carrier, or interstate wire transmission by Franklin, with knowledge and approval of members of the enterprises, which included information or communications in furtherance of or necessary to effectuate this scheme.

### B.     The law regarding fraud claims

31.     With regards to fraud claims, RICO complaints must allege:

> (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud.

*Merritt v. Lake Jovita Homeowner's Assoc., Inc.*, 358 Fed. Appx. 47, 49 (11th Cir. 2009). Here are some examples of the fraudulent statements meeting the requirements set out in *Merritt*:

> •     January 15, 2008 letter from Franklin, *See Merritt,* 358 Fed. Appx. 47, 49 (11th Cir. 2009)( illustrating the time and place of and person responsible for the statement) stating that it was a "NOTICE OF INTENT TO FILE A CIVIL LAWSUIT." The letter also made a false representation that the debt owed by Calma was $992.25, $257.25 more than the original debt. This was a false statement misleading Calma to believe this was the original debt, when it was neither Calma's actual debt to West, nor was it the original debt plus a "reasonable collection agency fee." The letter also stated that a lawsuit would have to be filed to secure West from any further loss. This was also a misrepresentation, as the debt owed by Calma cannot subject Calma to further loss. Calma was directed to make payment to West and to mail the check to West. *See Merritt,* 358 Fed. Appx. 47, 49 (11th Cir. 2009)(illustrating the precise statements, documents, or misrepresentations made and the content and manner in which the statements misled the Plaintiffs). Franklin and the enterprises gained from these misrepresentations. They gained more money than they were entitled to by mischaracterizing the amount and the nature of the debt owed. They also gained more money by making

threats that were not true. *Merritt,* 358 Fed. Appx. 47, 49 (11th Cir. 2009)(illustrating what Franklin and members of the enterprises gained by the alleged fraud).

- Also, on January 24, 2008, Franklin withdrew $1002.25 from Calma's account when it was only authorized to withdraw $992.25. Franklin was the "person" who was responsible for the fraud. Calma was misled by the fraud in the fact that he only thought $992.25 was being withdrawn from his account. The enterprise gained because it collected more money than it was authorized to collect.

- Letters from Franklin to Bradley dated December 11, 2009, January 8, 2010, and January 12, 2010. *Merritt,* 358 Fed. Appx. 47, 49 (11th Cir. 2009)(illustrating the time and place of and person responsible for the statement). The letters all mischaracterized the debt owed to Urology as being $1,155.02, when in fact the actual debt was $861.96, and also threatened legal action, as was the case with Calma. *See Merritt,* 358 Fed. Appx. 47, 49 (11th Cir. 2009)(illustrating the precise statements, documents, or misrepresentations made and the content and manner in which the statements misled Bradley). Franklin and the enterprises gained from these misrepresentations. They gained more money than they were entitled to by mischaracterizing the amount and the nature of the debt owed. They also gained more money by making threats that were not true. *See Merritt,* 358 Fed. Appx. 47, 49 (11th Cir. 2009)(illustrating what Franklin and members of the enterprises gained by the alleged fraud).

- Letter from Franklin to Bradley dated December 11, 2009. *See Merritt,* 358 Fed. Appx. 47, 49 (11th Cir. 2009)(illustrating the time and place of and person responsible for the statement). The letter stated it was from "The Collection Firm of Franklin Collection Service, Inc.," when in fact Franklin is known as simply Franklin Collection Service, Inc. *See Merritt,* 358 Fed. Appx. 47, 49 (11th Cir. 2009)(illustrating the precise statements, documents, or misrepresentations made and the content and manner in which the statements misled Bradley) Franklin was attempting to misrepresent and confuse Bradley into believing in was a law firm. Franklin gained from this misrepresentation by making Bradley fearful that a law firm

was involved. *See Merritt,* 358 Fed. Appx. 47, 49 (11th Cir.
2009)(illustrating what Franklin and members of the
enterprises gained by the alleged fraud).

32.     Plaintiffs have met the burden of alleging fraud in the manner required, as shown in

*Merritt.* There are more examples of fraud and the predicate acts. These examples also meet the

fraud allegation requirements, as set out in *Merritt.*

33.     As further evidence of the predicate acts, Katonia Haire ("Haire") is an individual

who has previously filed a lawsuit against Franklin asserting illegal collection activities on the part

of West.[2] Haire also signed a contract with West, which stated, in part, as follows: "I agree that if

this account is not paid when due, and if the hospital should retain an attorney or collection agency

for collection, I agree to pay all costs of collection including interest, reasonable attorney's fee (even

if suit filed) and reasonable collection agency fees." (Contract attached as Exhibit J).

34.     Prior to December 28, 2004, Haire incurred medical expenses from West for

$1011.71. On or about December 28, 2004, Franklin sent a communication to Haire through the US

mail, stating that it was an "ASSIGNMENT OF COLLECTION." This letter stated the debt owed

by Haire was $1315.22, $303.51 (or 30%) more than the original debt. (Letter attached as Exhibit

K). This representation by Franklin was false, as this was neither Haire's actual debt to West, nor

was it the original debt plus a "reasonable collection agency fee."

35.     Another example of Franklin's misconduct is Peddie Kelley ("Kelley"), an

individual who has previously filed a lawsuit against Franklin asserting illegal collection activities

on behalf of Northstar EMS, Inc. ("Northstar"), and ambulance company providing medical services

---

[2]     Haire is not a plaintiff in this case, and is used herein as evidence of predicate acts.

to consumers.[3]

36.     On or about March 11, 2005, Kelley incurred medical expenses from Northstar in the amount of $493.00 for ambulance services provided to Kelley. Subsequent to March 11, 2005, Franklin sent a collection notice communication to Kelley through the US mail. This collection notice stated the debt owed by Kelley was $631.00, $138.00 (or 28%) more than the original debt. This representation by Franklin was false, as this was neither Kelley's actual debt to Northstar, nor was it the original debt plus a "reasonable collection agency fee."

## C.     The Scienter requirement

37.     Franklin and the enterprise members had knowledge and intent with regards to their wrongdoing.  It can be inferred from the circumstantial evidence in this case. *See Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1353 (11th Cir. 2008).  In *Renta*, the Court stated:

> The existence of an agreement, as well as its objective, may be inferred from circumstantial evidence demonstrating that each defendant must necessarily have known that the others were also conspiring to participate in the same enterprise through a pattern of racketeering activity.   But this does not require proof that each conspirator agreed with every other conspirator. . . [or] was aware of all the details of the conspiracy.  Indeed, participation in a conspiracy may be inferred merely from acts which furthered its object.

*Id*. (citations omitted).  Franklin and members of the enterprises had knowledge that they were debt-padding each debt by approximately 35%.  As will be shown below, federal law allows collection charges that are expressly provided for by agreement.  In the case of Calma, "reasonable" was the term used in the agreement describing collection fees.  A reasonable inference can be made that

---

[3]     Kelley is not a plaintiff in this case, and is used herein as evidence of predicate acts.

Franklin and members of the enterprises knew that this collection fee was unreasonable. According to the Eleventh Circuit, this is sufficient to show that Franklin and the members of the enterprises had the requisite knowledge and intent.

38.     Here, knowledge and intent can be inferred from, although not an exhaustive list, some of these examples:

- Franklin clearly knew what it was doing because it added on a fee and tried to pass it off as the original debt. Even when notified of this by Bradley, it continued to pursue the original debt plus an unreasonable mark-up, and continued to mischaracterize the nature of the debt and the amount of the debt. This is clear knowledge.

- Franklin knew it was threatening civil litigation when it had no right to do so.

- With regards to the other members of the enterprises, Franklin was an agent for the UAB entities and Urology. They authorized Franklin to do their dirty work. Either the UAB entities and Urology are ratifying an unreasonable collection charge or they are receiving an amount far in excess of the original debt. Either way, the members of the enterprise knew that they are and were collecting an amount that is far in excess of the original debt and with knowledge that this amount is unreasonable. Franklin, whose actions can be attributed to the UAB entities and Urology through agency principles, is violating federal law when it mischaracterizes the nature and size of the debt, however it continues to do so for the benefit of itself and companies it represents. The circumstantial evidence in this case points to the members of the enterprises having scienter.

- As shown above, Franklin also misled Bradley into believing it was a law firm, by calling itself "The Collection Firm...," when this was not Franklin's true business name.

39.     Franklin, with knowledge and approval of the members of the enterprises, either knew or recklessly disregarded the fact that the misrepresentations described above were material, and

plaintiffs and the class members relied on the misrepresentations and omissions as set forth above, by paying or agreeing to pay amounts in excess of the original debt.

40.     Although Franklin and members of the enterprises represent to plaintiffs and class members that in the event of nonpayment, they could be subject to "reasonable collection agency fees," in fact, Franklin and the members of the enterprises covertly manipulate, maneuver, and exploit long-standing, accepted industry-wide practices related to collection activities, add-on charges that are unreasonable, and misrepresent the facts as to the amount, nature and character of the debt. Franklin and members of the enterprises routinely and improperly manipulate the actual debt owed with the purpose and effect of misleading plaintiffs and class members as to the actual amount of the debt. Through these manipulations, Franklin and members of the enterprises knowingly and systematically inflate the debt and profit from the monies wrongfully retained when the inflated debt is paid.

41.     Franklin and members of the enterprises misrepresent the amount of the debt to consumers. The covert manipulations performed by Franklin and the members of the enterprises, leading to the 35% charge, plus the $10 add-on, are per se unreasonable.

42.     As a result, Franklin and members of the enterprises have obtained money and property belonging to the Plaintiffs and the class members, and Plaintiffs and the class members have been injured in their business or property by the Defendant and members of the enterprises' overt acts of mail and wire fraud, and by their aiding and abetting each others' acts of mail and wire fraud.

### III.     THE RICO VIOLATIONS

### Count 1–18 U.S.C. §1962(a)

43.     Plaintiffs and class members incorporate by reference and reallege each foregoing

15

paragraph as if fully set forth herein.

44.    As shown above, Plaintiffs, class members, and the Defendant are each a "person" as the term is defined.

45.    Franklin and the UAB entities and Franklin and Urology are each an enterprise as defined in the RICO statutes. At all times relevant to the events alleged, Franklin, West, and System were associated with the UAB Enterprise or, in the alternative, an association in fact. At all time relevant to the events alleged, Franklin and Urology were associated with the Urology Enterprise or, in the alternative, an association in fact. The activities by the enterprises are activities that affected interstate commerce.

46.    As set forth above, members of the enterprises, including Franklin, with knowledge and approval of the UAB entities and Urology, receive income from their participation in an extensive pattern of racketeering activity. That income is reinvested to finance future racketeering activity, and the future operation of the enterprises.

47.    As a direct and proximate result of Franklin's violations of RICO, Plaintiffs and class members have been injured in their business and property.

### Count 2–18 U.S.C. §1962(c)

48.    Plaintiffs and class members incorporate by reference and reallege each foregoing paragraph as if fully set forth herein.

49.    As shown above, Plaintiffs, class members, and the Defendant are each a "person" as the term is defined.

50.    Franklin and the UAB entities and Franklin and Urology are each an enterprise as defined by the RICO statute. *See* 18 U.S.C. § 1961(3). At all times relevant to the events alleged,

16

Franklin, West, and System were associated with the UAB Enterprise or, in the alternative, an association in fact. At all time relevant to the events alleged, Franklin and Urology were associated with the Urology Enterprise or, in the alternative, an association in fact. The activities by the enterprises are activities that affect interstate commerce.

51.     In violation of this section of RICO, Franklin, with knowledge and approval of the UAB entities and Urology, conducted and participated in the affairs of the two enterprises, and conducted and participated, directly and indirectly, in the conduct of the affairs of the two enterprises through the above-referenced pattern of racketeering activity.

52.     As a direct and proximate result of Franklin's violations of RICO, Plaintiffs and class members have been injured in their business and property.

### Count 3–18 U.S.C. §1962(d)

53.     Plaintiffs and class members incorporate by reference and reallege each foregoing paragraph as if fully set forth herein.

54.     Franklin and members of the enterprises' conspiracy to secure money due the plaintiffs and class members for their own use through this fraudulent scheme described above violates this section of RICO.

55.     Franklin and the members of the enterprises have engaged in the illegal conduct mentioned above as part of a common scheme or conspiracy. This conspiracy could not have been achieved and been effective without the willing participation of Franklin and the members of the enterprises.

56.     Franklin and the members of the enterprises, with knowledge and intent, agreed to the overall objective of the conspiracy and Franklin agreed to commit at least two predicate acts and

17

Franklin and the members of the enterprises verbally agreed to participate in the conspiracy.

57.   Franklin and the members of the enterprises, with knowledge and intent, agreed to and did aid and abet all of the above illegal activities, RICO predicate acts, and RICO violations.

58.   For the fraudulent schemes to be successful, Franklin and each member of the enterprises had to agree to enact and utilize the same devices and fraudulent tactics against the plaintiffs and members of the class.

59.   Numerous common facts and similar activities, which reflect the above reality and imply the existence of a conspiracy, exist among Franklin and members of the enterprises, including:

- Franklin is compensated by each creditor based upon a contingency fee arrangement.

- Franklin and each creditor conspire to add artificial and illegal profits to the amount of debts owed by the members of the class.

- Franklin and each creditor conspire to use the telephone to collect these artificial profits and illegal charges.

- Franklin and each creditor conspire to use the U.S. postal system to collect these artificial profits and illegal charges.

- Franklin and each creditor conspire to use electronic mail, electronic payment systems, state and federal banking systems involved in interstate commerce, and other common means of collecting these artificial profits and illegal charges.

- Franklin and each creditor use a common post office box to collect these artificial profits and illegal charges.

- Franklin and each creditor conspire to add a percentage up-charge to each debt, rendering the collection charges per se unreasonable.

### Count 4–Violation of 18 U.S.C. §2:
### aiding and abetting in violation of RICO

60.     Plaintiffs and class members incorporate by reference and reallege each foregoing paragraph as if fully set forth herein.

61.     As set forth above, Franklin and members of the enterprises knowingly, and with shared intent, sought to, and have aided and abetted each of the other members of the enterprises in the commission of the predicate acts, in engaging in a pattern of racketeering activity, in violation of the RICO counts described above.

62.     As a result, under 18 U.S.C. §2, the RICO violations of each member of the enterprises are those of the others as if they had been committed directly by them.

63.     As a direct and proximate result of the fact that each member of the enterprises aided and abetted the others in violating the sections of RICO described above, plaintiffs and class members have been injured in their business and property by both the predicate acts which make up  Franklin and members of the enterprises' patterns of racketeering and their investment and reinvestment of income therefrom to operate, expand, and perpetuate the enterprises.

64.     Specifically, plaintiffs and class members have been injured in their business or property by the coerced payment of excess and improper charges, through undisclosed add-ons.

### IV.     VIOLATIONS OF THE FDCPA SPECIFIC TO BRADLEY.

### Count 5–15 U.S.C. § 1692e(2)(A)

65.     Bradley and class members incorporate by reference and reallege each foregoing paragraph as if fully set forth herein.

66.     As shown above, Franklin mischaracterized the amount of the debt owed by

representing that the original debt plus the mark-up fee was the original balance.   This is a mischaracterization of the status and character of the debt in violation of 15 U.S.C. § 1692e(2)(A). Franklin also threatened civil litigation which is a mischaracterization of the legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A).

### Count 6–15 U.S.C. § 1692f(1)

67.     Bradley and class members incorporate by reference and reallege each foregoing paragraph as if fully set forth herein.

68.     Franklin also violated 15 U.S.C. § 1692f(1) which does not allow the collection of an amount unless expressly authorized by the agreement creating the debt or permitted by law.   It is prohibited by law to mischaracterize the nature, amount, and legal status of a debt.   Therefore, Franklin has violated this section of the FDCPA.

### Count 7–15 U.S.C. § 1692e(5) and e(10)

69.     Bradley and class members incorporate by reference and reallege each foregoing paragraph as if fully set forth herein.

70.     Franklin also violated 15 U.S.C. § 1692e(5) and (10) which does not allow a debt collector to use false, deceptive, or misleading representations or means in connection with the collection of a debt.   This includes any false representation or the threat to take any action that cannot legally be taken or that is not intended to be taken.   Franklin made misleading representations about the character, amount, and legal status of the debt.

### Count 8–15 U.S.C. § 1692e(3)

71.     Bradley and class members incorporate by reference and reallege each foregoing paragraph as if fully set forth herein.

72.   Franklin violated §1692e(3) which does not allow a false representation or implication that any individual is an attorney or that the communication is from an attorney. Franklin also violated § 1692e(14) which does not allow the "use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization." Here, Franklin referred to itself as "The Collection Firm of Franklin Collection Service, Inc." in an attempt to mislead Bradley into believing Franklin was a law firm.

73.   As mentioned, Franklin is a "debt collector" as defined by the FDCPA.

## V.   <u>OTHER VIOLATIONS</u>

### <u>Count 9–Unjust Enrichment</u>

74.   Plaintiffs and class members incorporate by reference herein the preceding paragraphs of this Complaint.

75.   Franklin adds unreasonable, unconscionable, and illegal charges to the original debt, along with mischaracterizing the nature, amount, and legal status of the original debt, and then uses extortionate practices to collect the overcharges.

76.   As a result of these debt collection practices, Franklin has been unjustly enriched by its collection of the misrepresented debt.

### <u>Count 10 - Declaratory and Injunctive Relief</u>

77.   Plaintiffs and class members incorporate by reference herein the preceding paragraphs of this Complaint.

78.   Plaintiffs' claims arise under 18 U.S.C. §1964(a), which authorizes the District Courts to enjoin violations of 18 U.S.C. §1962, and under 28 U.S.C. §2201 which authorizes associated declaratory relief.

79.     Franklin has violated 18 U.S.C. §§1962(a), (c) and (d) and will continue to do so in the future.

80.     Enjoining Franklin from committing these RICO violations in the future and/or declaring their invalidity is appropriate as the plaintiffs and class members have no adequate remedy at law and will, as set forth above, suffer irreparable harm in the absence of the Court's declaratory and injunctive relief.

81.     As a result of Franklin's illegal collection practices, plaintiffs and class members have suffered and will continue to suffer severe and irreparable injury and harm.

82.     Accordingly, plaintiffs and class members seek a permanent injunction ordering Franklin to cease and desist its practice of adding overcharges to the debt owed and threatening civil litigation in an effort to collect the excess amounts, in violation of RICO, as set forth above. Moreover, plaintiffs and class members seek a declaration that Franklin's use of a percentage up-charge on debts being collected is *per se* unreasonable and unconscionable, in that, for example, a 35% up-charge with the threat to add even more than that is not reasonable, and bears no relationship to the effort and activity involved in collecting the debt, nor the amount of the debt. Plaintiffs and class members also seek a declaration that Franklin is illegally holding itself out as a law firm and seek a permanent injunction ordering Franklin to cease and desist from this practice.

## Count 11–Civil Conspiracy

83.     Plaintiffs and class members incorporate by reference herein the preceding paragraphs of this Complaint.

84.     Franklin and members of the enterprises willfully, knowingly, and intentionally agreed and conspired with each other for the purpose of engaging in unlawful conduct, for unlawful

22

purposes, including acts of fraud, the furtherance of their schemes, and for the purpose of engaging in otherwise lawful conduct by wrongful conduct and means.

85.     Franklin and members of the enterprises committed the acts alleged pursuant to, and in furtherance of, that agreement and furthered the conspiracy by cooperating, encouraging, ratifying, or adopting the acts of the others.

86.     As a direct and proximate result of the acts in furtherance of the conspiracy, plaintiffs and class members have suffered injury, damage, loss, and harm.  The wrongful conduct committed pursuant to the conspiracy was a substantial factor in causing this harm.

87.     Franklin and members of the enterprises intentional agreement to commit, and the commission of, these wrongful acts was willful, malicious, oppressive, and in wanton and conscious disregard of plaintiffs' and class members' rights.  Plaintiffs and class members are entitled to an award of punitive damages to punish Franklin's wrongful conduct and to deter future wrongful conduct.  As a result, plaintiffs and class members have been damaged in an amount to be proven at trial.

### Count 12–Aiding and Abetting

88.     Plaintiffs and class members incorporate by reference herein the preceding paragraphs of this Complaint.

89.     Franklin, with approval and ratification from the members of the enterprises, had full knowledge of or should have reasonably known of the true nature of the wrongful conduct of each other member of the enterprises, and aided and abetted such wrongful conduct, including acts of fraud and conspiracy, by providing substantial assistance and by encouraging the others to act.

90.     As a direct and proximate result of the aiding and abetting of these acts, plaintiffs and

class members have suffered injury, damage, loss and harm. The wrongful conduct aided and abetted by Franklin and the members of the enterprises was a substantial factor in causing this harm.

91.     Franklin and members of the enterprises' aiding and abetting of these wrongful acts was willful, malicious, oppressive, and in wanton and conscious disregard of plaintiffs' and class members' rights. Plaintiffs and class members are entitled to an award of punitive damages to punish their wrongful conduct and to deter future wrongful conduct.

92.     As a result, plaintiffs and class members have been damaged in an amount to be proven at trial.

### Count 13–Fraud

93.     Plaintiffs and class members incorporate by reference herein the preceding paragraphs of this Complaint.

94.     As shown in full and particular detail above, and in this count, Franklin, with ratification and approval from the other members of the enterprises, made certain representations to the plaintiffs and class members. According to the attached exhibits above, Franklin·and members of the enterprises have committed and continue to commit the following acts of fraud:[4]

- Franklin, with knowledge and approval of members of the enterprises, misrepresented to the plaintiffs and class members the amount of the underlying debt owed.

- Franklin, with knowledge and approval of members of the enterprises, concealed and failed to disclose the nature and extent of additional charges added to the underlying debt.

- West, System, and Urology, with ratification from Franklin, each misrepresented to the plaintiffs and class members that

---

[4]     The descriptions of the fraud, along with the attached exhibits satisfy the *Merritt* requirement for alleging fraud. *See* attached exhibits A - K which illustrate the *Merritt* requirements.

they could be subject to a "reasonable collection charge."

- Franklin, with knowledge and approval of members of the enterprises, misrepresented to plaintiffs and class member, and threatened them that, the underlying debt itself could increase even beyond the unlawful and unreasonable collection charges already imposed.

- Franklin, with knowledge and approval of members of the enterprises, failed to disclose that it had developed and used unlawful guidelines to deceive plaintiffs and class members into paying unlawful charges.

- Franklin, with knowledge and approval of members of the enterprises, concealed and failed to disclose that in addition to adding an unreasonable and unlawful 35% to the underlying debt, an additional $10 charge is then placed on plaintiffs' and class members' accounts.

- Franklin, with knowledge and approval of members of the enterprises, concealed and failed to disclose that they provide incentives to employees to obtain unreasonable and unlawful overcharged amounts above and beyond the underlying debt.

- Franklin, with knowledge and approval of members of the enterprises, concealed and failed to disclose that upon receiving authorization to debits plaintiffs' and class members' bank accounts, additional undisclosed charges will be debited without authorization.

- Franklin and members of the enterprises each routinely give untrue and fraudulent explanations for the amount of the charges being collected, in an effort to deceive plaintiffs and class members into paying the unreasonable and unlawful overcharged amount.

- Franklin and members of the enterprises each routinely give misinformation and false statements to plaintiffs and class members about the nature of the debts, and concealed and failed to disclose critical information about the unreasonable and unlawful collection charges being added to the underlying debt.

25

95.     As a result, Franklin and members of the enterprises have obtained money and

property belonging to the plaintiffs and class members, and plaintiffs and class members have been

injured in their business or property by Franklin and members of the enterprises' overt acts of fraud.

96.     The representations made by Franklin, with ratification and approval from the other

members of the enterprises, were false, and Franklin knew that they were false.

97.     Plaintiffs and class members believed the representations and in reliance upon them

paid the misrepresented debts.

## CLASS ALLEGATIONS

### Definition

98.     Plaintiffs and class members incorporate by reference herein the preceding paragraphs

of this Complaint.

99.     Plaintiffs bring this action on their own behalf and pursuant to FED. R. CIV. P.

23(b)(1)(A), (b)(2), and/or (b)(3), as a class action on behalf of a nationwide class of persons defined

as:

> All debtors who received collection notices from Franklin where the
> amount claimed to be due for collection purposes was larger than the
> actual bill from the original creditor, and who paid or agreed to pay
> any or all of the amount in excess of the original debt, for a period of
> four years prior to the commencement of this action. This class does
> not include any person who has been sued by the Defendant for
> charges or anyone who has paid less than the original debt. The class
> also does not include the Defendant or any officers or directors of the
> Defendant, the legal representatives, heirs, successors and assigns of
> the Defendant, and any judicial officer involved in this matter and
> their immediate family.

## Numerosity

100.     The members of the class are so numerous that joinder of all members is impractical

and inefficient such that the requirements of FED. R. CIV. P. 23(a)(1) are met.  Plaintiffs do not know

the exact number of class members, but are informed and believe that hundreds, if not thousands, of

debtors have been sent collection notices by Franklin for amounts not actually owed.  The class is

ascertainable as the names and addresses of all class  members can be identified in business records

maintained by Franklin.

## Commonality

101.     The questions of law and fact common to the class include, *inter alia*:

     (a)    whether defendant and members of the enterprises conspired and/or aided and abetted each other in furtherance of the unlawful acts alleged herein;

     (b)    whether defendant and members of the enterprises have engaged in mail and wire fraud;

     (c)    whether defendant and members of the enterprises engaged in a pattern of racketeering activity;

     (d)    whether the UAB Enterprise and Urology Enterprise are enterprises within the meaning of 18 U.S.C. §1961(4);

     (e)    whether defendant and members of the enterprises have used or invested income from the racketeering activities to establish or operate the enterprises in violation of 18 U.S.C. § 1962(a);

     (f)    whether defendant and members of the enterprises conducted or participated in the affairs of the enterprises through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c);

     (g)    whether defendant and members of the enterprises' overt and/or predicate acts in furtherance of the conspiracy and/or

27

aiding and abetting and/or direct acts in violation of 18 U.S.C. §1962(a)(c) proximately caused injury to plaintiffs' and class members' business or property;

(h)  whether defendant acts and/or refuses to act on grounds generally applicable to the plaintiffs and class members;

(i)  whether defendant and members of the enterprises fraudulently concealed their scheme;

(j)  whether defendant and members of the enterprises are unjustly enriched by their scheme;

(k)  whether the collection charges applied by the defendant and members of the enterprises are *per se* unreasonable and unconscionable;

(l)  whether the plaintiffs and other class members are entitled to restitution of overcharges collected by Franklin; and,

(m)  whether the court should grant injunctive relief to plaintiffs and class members to prevent the defendant and members of the enterprises' ongoing conduct.

The requirements of FED. R. CIV. P. 23(a)(2) are met.

### Typicality

102.  The claims of the representative plaintiffs are typical of the claims of the class as a whole.  If brought and prosecuted individually, the claims of each class member would necessarily require proof of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.  Plaintiffs are members of the class and has suffered harm due to the unfair, deceptive, and unconscionable collection practices of Franklin.  The requirements of FED. R. CIV. P. 23(a)(3) are met.

**Adequate Representation**

103.     The representative plaintiffs are willing and prepared to serve the Court and proposed

class and sub-classes in a representative capacity with all of the obligations and duties material

thereto, pursuant to FED. R. CIV. P. 23(a)(4).  The interests of the representative plaintiffs are

consistent with and not antagonistic to the interests of the class.  The class representative has retained

counsel experienced in prosecuting class actions and complex consumer litigation.

**RULE 23(b)(1)**

104.     The prosecution of separate actions by individual members of the class would create

a risk of adjudications with respect to individual members of the class which would, as a practical

matter, be dispositive of the interests of other members of the class who are not parties to the action,

or could substantially impair or impede their ability to protect their interests.

105.     The prosecution of separate actions by individual members of the class would create

a risk of inconsistent or varying adjudications with respect to individual members of the class which

would establish incompatible standards of conduct for the parties opposing the class.   Such

incompatible standards and inconsistent or varying adjudications, on what would necessarily be the

same essential facts, proof, and legal theories would also create and allow to exist inconsistent and

incompatible rights within the plaintiffs' class.

**RULE 23(b)(2)**

106.     The defendant has  acted or refused to act on grounds generally applicable to the

class, making final declaratory or injunctive relief appropriate.

## RULE 23(b)(3)

107.    The questions of law and fact common to members of the class and sub-classes predominate over any questions affecting only individual members.

108.    A class action is superior to other available methods for the fair and efficient adjudication of the controversies herein in that individual claims by the class members are impractical as the costs of pursuit far exceed what any one plaintiff or class member has at stake.    Therefore, certification under FED. R. CIV. P. 23(b)(3) is appropriate.

109.    In sum, Plaintiffs and class members reincorporate into the class allegations section of this Complaint all of the allegations in this Complaint, including, but not limited to, the RICO allegations, conspiracy allegations, unjust enrichment allegations, and FDCPA allegations.

## PRAYER FOR RELIEF

**WHEREFORE**, based upon the above, Plaintiffs, on behalf of themselves and all members of the class they represent, seek judgment and request that this Court grant the following relief:

(1)    For an order certifying the class, designating Plaintiffs as the class representatives, and Plaintiffs' attorneys as class counsel;

(2)    Three times the amount of Plaintiffs' and the class' economic losses resulting from Defendant's conduct described above as provided in 18 U.S.C. § 1964(c);

(3)    Permanent injunctive relief enjoining the Defendant from participating in the improper and/or unlawful conduct herein alleged;

(4)    Compensatory and all other allowable damages, including statutory damages under the causes of actions asserted herein;

(5)    An award of costs, expenses of litigation, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964);

(6)    Any damages allowable under 15 U.S.C. § 1692(k), for violations of the FDCPA.

(7)     For an order requiring restitution of overpayments made by plaintiffs and class members to the defendant, and disgorgement of the money defendant has improperly collected; and,

(8)     Such other and further, supplemental, alternative, different, or additional damages, pre- and post-judgment interest, costs, fees, or equitable relief as may be appropriate under the premises.

**PLAINTIFFS AND CLASS MEMBERS RESPECTFULLY DEMAND A TRIAL BY STRUCK JURY.**

Respectfully Submitted,

A. David Fawal (BAR No.: ASB-4593-W82A)

**OF COUNSEL:**
**Beers, Anderson, Jackson,**
**Patty & Fawal, P.C.**
1125 Colonial Plaza
2101 6th Avenue North
Birmingham, Alabama 35203
Telephone:     (205) 327-5331
Facsimile:     (205) 327-5383

Allan L. Armstrong (BAR No.: ASB-4400-R77A)

2013 First Avenue North, Suite 450
Birmingham, Alabama 35203
Telephone:     (205) 453-0060
Facsimile:     (205) 331-0052

31

*Darrell L. Cartwright*

**Darrell L. Cartwright (BAR No.: ASB-1771-I58D)**

**Cartwright Law Corporation**
Post Office Box 383204
Birmingham, Alabama 35238-3204
Telephone:     (205) 222-5900
Facsimile:     (866) 852-1330

**Attorneys for Plaintiffs**

**SERVE DEFENDANT AT THE FOLLOWING ADDRESS:**

**Franklin Collection Services, Inc.**
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, Alabama  36109-5420

32