FILED
2011 Mar-24  AM 10:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **MELVIN BRADLEY and** | ) | |
| **KEVIN A. CALMA,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **Civil Action Number** |
| **v.** | ) | 5:10-cv-01537-AKK |
| | ) | |
| **FRANKLIN COLLECTION** | ) | |
| **SERVICE, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Melvin Bradley and Kevin Calma ( "plaintiffs"), individually, and on behalf
of all others similarly situated, filed this action against Franklin Collection
Service, Inc. ("defendant"), alleging claims under the Racketeer Influenced and
Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"), the Fair Debt
Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"), and Alabama
state law.  Doc. 1.  Defendant moved to dismiss all claims under Federal Rule of
Civil Procedure 12(b)(6).  Doc. 10.  For the reasons set forth below, the motion is
GRANTED in part and DENIED in part.

## I.  APPLICABLE STANDARDS

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient.  *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotation marks omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 1949 (citing *Bell Atl. Corp.*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotation marks omitted).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Id.* (citation omitted).  The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

## II.  FACTUAL BACKGROUND[1]

Defendant is a Mississippi corporation "in the business of collecting debts using the mails and telephone."  Doc. 1 ¶ 7.  According to plaintiffs, defendant conspires with creditors to illegally "collect[] amounts far in excess of the original debts without disclosing the nature and the extent of . . . additional charges."  Doc. 1 ¶ 12.  Specifically, plaintiffs allege that "[defendant] claims that the debt it is collecting is the actual debt, when it actually is the original debt plus a hidden mark-up for collection fees."  Doc. 1 ¶ 13.  Plaintiffs contend that this practice results in defendant and creditors obtaining more money and property than they

---

[1]"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *See Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1950 (2009).

are rightfully or legally entitled from debtors.  Doc. 1 ¶¶ 25, 26.  Plaintiffs are two

such debtors.

## A.    *Kevin Calma*

On or about June 17, 2007, Calma's daughter received treatment at UAB

Medical West ("UAB West").  Doc. 1 ¶ 15.  UAB West "provide[s] medical care

to individuals" as part of UAB Health System ("System"), which "manages

healthcare delivery, charges, and billing for all UAB hospitals."  Doc. 1 ¶ 12.

UAB West billed Calma $735, which Calma believed his insurance company

would pay.  *Id*. ¶¶ 15-16.  Calma is, however, obligated because he signed a

contract with UAB West, in which he "agree[d] that if this account is not paid

when due, and if the hospital should retain an attorney or collection agency for

collection . . . to pay all costs of collection including interest, reasonable attorney's

fee (even if a suit is filed) and reasonable collection agency fees."  *Id*. ¶ 15.

When Calma failed to pay the bill, pursuant to its arrangement to collect

unpaid bills for UAB West and System, defendant mailed Calma a letter dated

January 15, 2008, stating in part:

> ***NOTICE OF INTENT TO FILE CIVIL LAWSUIT***
>
> Beware, the creditor listed below has authorized [us] to file a civil
> lawsuit against you on their behalf to secure themselves from any
> further loss.

4

Also, be advised to avoid the possibility of incurring added expenses such as court cost, attorney fees and/or damages this debt should be paid in full.  This communication is from a debt collector.  This is an attempt to collect a debt, any information obtained will be used for this purpose.

*Id*.; Doc. 1-1 at 3.  The letter listed the "Balance Due" as $992.25, and instructed Calma to send a check payable to UAB West or to call a 1-888 number with his checking-account information.  *Id*.  Thereafter, Calma authorized defendant to withdraw $992.25 from his bank account.  Doc. 1 ¶ 18. However, defendant withdrew ten dollars more, $1,002.25.  *Id*.

**B.    *Melvin Bradley***

On or about July 2, 2009, Bradley incurred a debt of $861.96 from North Alabama Urology, P.C. ("Urology").  Doc. 1 ¶ 22.  Before incurring the debt, Bradley signed a patient-registration form, which stated: "In the event of non-payment, either by insurance or by myself, I agree to pay all costs of collection, including a reasonable attorney's fee in the event it is necessary to employ an attorney to enforce any provision of this contract." *Id*.; Doc. 1-1 at 4.  Defendant wrote Bradley on December 11, 2009, stating that Urology assigned it the collection of the debt.  *Id*.   The letter stated:

Total Due All Creditor(s):                    $1,155.02
List of Creditor(s) You Owe:

NORTH ALABAMA UROLOGY PC          $1,155.02

*Id.* at ¶ 22; Doc. 1-1 at 6.  Defendant referred to itself as "The Collection Firm of Franklin Collection Service, Inc.," and instructed Bradley to mail a check payable to defendant or to call a 1-888 number with his checking-account or credit-card information.  *Id.*

Bradley wrote defendant on January 6, 2010, stating that he owed only $861.96, and that he would pay that amount when he received a corrected statement.  *Id.* ¶ 23.  Defendant responded with a letter dated January 8, 2010, which stated:

        INCUR[R]ED DATE:              07/02/09
        DATE PLACED FOR COLLECTION:   12/11/09
        ORIGINAL BALANCE:             1,155.02
        CURRENT BALANCE:              1,155.02
        PATIENT NAME:                 MELVIN BRADLEY

Doc. 1-1 at 8.  Bradley paid the $1,155.02.[2]

## C.    *Previous Litigation*

Calma previously sued defendant, UAB West, and System, individually, and

---

[2]In the complaint, plaintiffs fail to specifically allege that Bradley paid $1,155.02. However, they allege that as a result of letters to Bradley seeking $1,155.02, "[defendant] and the enterprises gained more money than they were entitled" and that "[defendant] gained . . . by making Bradley fearful that a law firm was involved."  Doc. 1 ¶ 31.  Additionally, in response to defendant's motion to dismiss, plaintiffs assert that "[Bradley] paid [defendant] $1,155.02 on February 28, 2010, with a reservation of rights to recover overcharges" and that "[i]f the Court finds it necessary, Plaintiffs will amend their complaint to specifically attach this check."  Doc. 17 at 2 n.1.  The court finds such action unnecessary.

on behalf of all others similarly situated, alleging RICO-related claims and supplemental state-law claims based on defendant's debt collection practices.  *See Kevin A. Calma v. Franklin Collection Service, Inc., et al.*, No. 2:08-cv-00350-LSC (N.D. Ala. filed Feb. 27, 2008) ("*Calma I*").  Calma alleged RICO violations based on alleged predicate acts of mail and wire fraud, extortion, and travel in aid of extortion as well as state-law claims of civil conspiracy, aiding and abetting, and unjust enrichment, and he sought declaratory and injunctive relief under 18 U.S.C. § 1964(a).  *Id.*, Doc. 1.  Judge L. Scott Coogler dismissed the case without prejudice on November 24, 2008, *id.*, doc. 25, and denied Calma's motions for reconsideration, doc. 27, and for leave to amend the complaint, doc. 36, on December 8, 2008, and February 3, 2009, respectively.  On June 17, 2010, Calma and Bradley filed the instant action.[3]  Doc. 1.

### III.   ANALYSIS

Plaintiffs' complaint contains 13 counts:  Counts I-IV allege federal RICO and RICO-related claims; Counts V-VIII allege violations of the FDCPA; Counts IX and XI-XIII allege supplemental state-law claims of unjust enrichment, civil conspiracy, and fraud; and Count X seeks declaratory and injunctive relief under 18 U.S.C. § 1964(a).  Doc. 1.  These claims all arise from plaintiffs' allegations

---

[3]Bradley was not a party in *Calma I*.

7

that defendant fraudulently misrepresented the character and amount of debts and

coerced payment of amounts greater than they legally or rightfully owed by

threatening civil litigation.  Doc. 1 ¶ 26.  Plaintiffs detail the debt-collection

practices as follows:

> With [defendant] as the workhouse, the UAB entities and Urology
> dictated the methods by which contracts were prepared for patients
> with respect to collections, determined the utilization of collection
> agencies, and dictated directly or through delegation methods by
> which [defendant] collected the debts.  Then it was time for
> [defendant] to begin its scheme of passing off the unreasonably
> inflated debt as the original debt.  All the UAB entities and Urology
> would have to do is sit back and watch the checks roll in based upon
> [defendant's] tactics.

Doc. 1 ¶ 25.

Defendant has moved to dismiss all the claims against it.  Doc. 10.  The

court will address first, in Section A, the RICO-related claims, Counts I-IV; in

Section B, the FDCPA claims, Counts V-VIII; in Section C, the state-law claims,

Counts IX and XI-XIII; and, finally, in Section D, the declaratory and injunctive

relief claim, Count X.

## A.    *RICO Claims – Counts I-IV*

RICO prohibits certain conduct involved in a "pattern of racketeering

activity," and, in addition to criminal sanctions, provides a private right of action

to "[a]ny person injured in his business or property by reason of a violation of

section 1962." 18 U.S.C. § 1964(c).  Plaintiffs plead four violations of § 1962

based upon alleged predicate acts of mail and wire fraud:  Counts I and II –

violations of §§ 1962(a) and (c), respectively; Count III – a RICO conspiracy

under § 1962(d); and Count IV – a violation of 18 U.S.C. § 2 for aiding and

abetting members of the UAB and Urology enterprises to violate § 1962.[4]  Doc. 1.

¶¶ 43-64.  For context, § 1962(a) prohibits the investing of proceeds derived from

a pattern of racketeering activity into an enterprise, § 1962(c) prohibits the

conducting of the affairs of an enterprise through a pattern of racketeering activity,

and § 1962(d) prohibits the conspiring to violate § 1962(a), (b), or (c).

In civil-RICO cases, plaintiffs must satisfy 18 U.S.C. § 1964, which

requires them to "prove, first, that § 1962 was violated; second, that they were

injured in their business or property; and third, that the § 1962 violation caused the

injury."  *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1396 (11th Cir.

---

[4]The RICO statute defines the term "enterprise" as "any union or group of individuals associated in fact." 18 U.S.C. § 1961(4).  Plaintiffs allege the existence of two RICO enterprises – the "UAB Enterprise" and the "Urology Enterprise." Doc. 1 ¶ 10.  The UAB Enterprise is composed of defendant, West, System, and "other unnamed UAB hospitals and creditors utilizing collection services from [defendant]." *Id*. ¶ 11.  The Urology Enterprise is composed of defendant, Urology, and "other unnamed creditors utilizing collection services from [defendant]." *Id*. ¶ 20.  In addition to conducting mail and wire fraud, plaintiffs allege that "[t]he enterprises are ongoing and the businesses involved in the enterprises have structures and existence separate and distinct from the enterprises and the pattern of racketeering alleged in this Complaint, along with conducting operations involved in interstate commerce." *Id*. ¶ 26.  Plaintiffs do not identify the "structures and existence separate and distinct from the enterprises" to which they refer.  *Id*.

1994).  For the reasons stated below, the court finds that plaintiffs satisfy this threshold requirement for their § 1962(c) claim and their § 1962(d) claim predicated on § 1962(c).

     1.     *Standing - 18 U.S.C. § 1964(c)*

Initially, defendant contends that dismissal is warranted on the RICO-related counts because plaintiffs failed to adequately plead an injury under § 1964(c).  Doc. 11 at 6-7.  Section 1964(c) requires that "civil RICO claimants . . . show (1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation."  *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1283 (11th Cir. 2006).  A civil-RICO plaintiff who cannot establish these two elements lacks standing to sue.  *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) ("the plaintiff only has standing if . . . he has been injured in his business or property by the conduct constituting the violation").

Contrary to defendant's contention, plaintiffs have standing.  First, as to the requisite injury to business or property, plaintiffs allege that, as a result of misrepresentations about the character and amounts of debts, "[defendant] and members of the enterprises have obtained money and property belonging to the Plaintiffs and the class members."  Doc. 1 ¶ 42.  Therefore, plaintiffs adequately

pleaded an injury to a property interest.

Second, the "by reason of" requirement "implicates two concepts: (1) a sufficiently direct injury so that a plaintiff has standing to sue; and (2) proximate cause." *Williams*, 465 F.3d at 1287 (citing *Trollinger v. Tyson Foods*, 370 F.3d 602 (6th Cir. 2004) ("RICO's civil-suit provision imposes two distinct but overlapping limitations on claimants – standing and proximate cause.")).  Here, plaintiffs satisfy the direct-injury requirement because they claim that defendant's alleged misrepresentations about their debts resulted directly in defendant obtaining money and property from them.  Doc. 1 ¶ 42.  Plaintiffs specifically allege that they "have been injured in their business or property *by defendant and members of the enterprises' overt acts of mail and wire fraud*, and *by their aiding and abetting each others' acts of mail and wire fraud*."  *Id.* (emphasis added).  Thus, plaintiffs satisfy the direct-injury requirement.  *See Williams*, 465 F.3d at 1287.

Similarly, in considering the proximate-cause requirement, "the central question . . . is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).  *See also Bryne v. Nezhat*, 261 F.3d 1075, 1110 ( 11th Cir. 2001) (holding that the "restrictive view of the proximate cause requirement means that a plaintiff has standing to sue only

if his injury flowed directly from the commission of the predicate acts"). Plaintiffs satisfy this requirement because they adequately pleaded that defendant's alleged acts of mail and wire fraud caused their loss of money and property. *See* Doc. 1 ¶¶ 29-42. Specifically, plaintiffs contend that Calma paid more than he owed because of "[f]eeling threatened" by defendant's fraudulent representations of the debt, doc. 1 ¶ 18, and that defendant "gained from . . . making Bradley fearful that a law firm was involved," *id* ¶ 31. Plaintiffs further allege that defendant and members of the enterprises "profit from monies wrongfully retained when the inflated debt is paid" as a result of their "manipulations." *Id*. ¶ 40. Based on these allegations, plaintiffs have sufficiently alleged a direct relationship between the alleged RICO violations (mail and wire fraud) and their injuries (loss of money and property) and, therefore, have standing to sue. Consequently, the court now turns to defendant's arguments about the merits of plaintiffs' RICO claims.

2. *Count I - 18 U.S.C. § 1962(a)*

In Count I, plaintiffs allege that defendant violated § 1962(a) because the UAB and Urology enterprises "receive income from their participation in an extensive pattern of racketeering activity. . . . [and that] income is reinvested to finance future racketeering activity, and the future operation of the enterprises." Doc. 1 ¶ 46. Defendant contends that Count I does not adequately plead injury

12

under § 1962(a), which expressly prohibits

> any person who has received any income derived . . . from a pattern of racketeering activity . . . to use or invest . . . any part of such income . . . in acquisition of any interest in, or the establishment or operation of, any *enterprise* which is engaged in, or the activities of which affect, interstate or foreign commerce.

(emphasis added).  According to defendant, the term "enterprise" in the statute "refers not to the 'racketeering enterprise,' but contemplates investment in some other, legitimate business."  *Tuscano v. Tuscano*, 403 F. Supp. 2d 214, 227-28 (E.D.N.Y. 2005) (citing *USA Certified Merchants, LLC v. Koebel*, 262 F. Supp. 2d 319, 331 (S.D.N.Y. 2003)).  Consequently, defendant contends that plaintiffs fail to state a claim under § 1962(a) because they allege reinvestment of proceeds from RICO violations into the enterprises conducting the racketeering activity rather than into separate enterprises engaged in interstate or foreign commerce.  Doc. 11 at 8-9.

In addition to *Tuscano*, defendant relies on a Middle District of Florida case explaining that a "§ 1962(a) enterprise is 'something acquired through the use of illegal activities or by money obtained from illegal activities,'" unlike a "§ 1962(c) enterprise, which 'generally connotes the vehicle through which the unlawful

pattern of racketeering activity is committed.'"[5]  *Lockheed Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350, 1368 (M.D. Fla. 2005) (quoting *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 259 (1994)).  In distinguishing subsections (a) and (c), the *Lockheed Martin* court reasoned that if § 1962(a) required only injury from reinvestment of income into the racketeering activity then "almost every pattern of racketeering activity by a corporation would be actionable under § 1962(a), and distinction between § 1962(a) and § 1962(c) would be meaningless."  357 F. Supp. 2d at 1371.  Thus, that court summarily found that a "§ 1962(a) enterprise is, in other words, 'the victim of unlawful activity,' not the vehicle through which that activity is committed."  *Id*.  (quoting *Scheidler*, 510 U.S. at 259).

Defendant also relies on a Northern District of Georgia case, which piggybacked on *Lockheed Martin* to find that "merely alleging reinvestment of racketeering proceeds into the enterprise is insufficient to state a claim under § 1962(a)."  *Fuller v. Home Depot Servs. LLC*, 512 F. Supp. 2d 1289, 1293 (N.D. Ga. 2007).  The *Fuller* court noted that the Eleventh Circuit has not addressed the proper construction of the term "enterprise" in § 1962(a), but that a "majority of

---

[5]Section 1962(c) prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

14

courts . . . have adopted a more restrictive rule that limits standing under § 1962(a) to only allegations of an injury that results from the investment of the racketeering proceeds, not an injury resulting from the underlying racketeering activity itself." *Id*. at 1294 (citing *Lockheed Martin Corp*., 357 F. Supp. 2d at 1369-71) (in turn citing numerous cases adopting this rule); *see also Vicom v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 n.6 (7th Cir. 1994) (stating that "the majority view is that the mere reinvestment of the racketeering proceeds into a business activity is not sufficient for § 1962(a) standing").

     This court adopts the majority rule and finds that to sufficiently maintain an action under § 1962(a), the plaintiff must allege an injury resulting from the use or investment of the racketeering proceeds, rather than "an injury resulting from the underlying racketeering enterprise itself." *Id*. The court further agrees with the *Lockheed Martin* court that § 1962(a) does not "'contemplate a channeling of profits' derived from racketeering acts 'back to [the] RICO violator.'" 357 F. Supp. 2d at 1370-71 (quoting *Allstate Ins. Co. v. Seigel*, 312 F. Supp. 2d 260, 271 (D. Conn. 2004)). Therefore, under § 1962(a), an injury resulting from the investment of the proceeds must be distinct from an injury resulting from the racketeering activity. *Id*.; *see also Ouaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir. 1990) ("the essence of a violation of § 1962(a) is not commission of predicate

acts but investment of racketeering income").

Here, plaintiffs fail to allege facts indicating that they suffered an injury from the reinvestment of racketeering income.  Instead, plaintiffs merely assert that "income [from the racketeering activity] is reinvested to finance future racketeering activity, and the future operation of the enterprises," and, in the next paragraph, that "[a]s a direct and proximate result of [defendant's] violations of RICO, Plaintiffs and class members have been injured in their business and property."  Doc. 1 ¶¶ 46, 47.  These conclusory allegations of injury from the reinvestment of the racketeering income are insufficient under *Twombly* and *Iqbal*. Moreover, the allegations denote only that defendant is purportedly reinvesting into the enterprise "to finance future racketeering activity," *id.*, which is not sufficient to state a claim.  Consequently, Count I is dismissed for failure to state a claim under § 1962(a).

3.    *Count II - 18 U.S.C. § 1962(c)*

In Count II, plaintiffs allege that defendant violated § 1962(c), which prohibits a person from conducting the affairs of an enterprise through a pattern of racketeering activity:[6]  "[Defendant] has engaged in a pattern of racketeering by

---

[6]"Racketeering activity" is the violation of certain state and federal criminal statutes, including the federal mail and wire fraud statutes, which plaintiffs allege here.  *See* 18 U.S.C. § 1961(1).

violating 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud)."  Doc. 1 ¶ 28.

"Mail or wire fraud occurs when a person '(1) intentionally participates in a

scheme to defraud another of money or property and (2) uses the mails or wires in

furtherance of that scheme.'"  *American Dental Ass'n v. Cigna Corp.*, 605 F.3d

1283, 1290 (11th Cir. 2010) (quoting *Pelletier v. Zweifel*, 921 F.2d 1465, 1498

(11th Cir.), *cert. denied*, 502 U.S. 855 (1991)).  *See also Hope for Families &*

*Cmty. Serv., Inc. v. Warren*, 721 F. Supp. 2d 1079, 1128 (M.D. Ala. 2010) ("Mail

and wire fraud are the predicate acts and require, among other things, proof of a

scheme or artifice to defraud.").  Importantly, claims of mail and wire fraud must

not only comply with *Twombly* and *Iqbal*, but also with Federal Rule of Civil

Procedure 9(b), which states that "[i]n all averments of fraud . . . the circumstances

constituting fraud . . . shall be stated with particularity."  The Eleventh Circuit has

instructed that under Rule 9(b) "a plaintiff must allege: '(1) the precise statements,

documents, or misrepresentations made; (2) the time, place, and person

responsible for the statement; (3) the content and manner in which these

statements misled the Plaintiffs; and (4) what the defendants gained by the alleged

fraud.'" *American Dental,* 605 F.3d at 1291(quoting *Brooks v. Blue Cross & Blue*

*Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

The court disagrees with defendant's contention that plaintiffs failed to allege sufficient facts to establish mail and wire fraud.  In the complaint, plaintiffs alleged that defendant engaged in mail and wire fraud by:

> - [mailing or receiving] material containing false and fraudulent misrepresentations regarding the amount, character, and legal status of the debt being collected;
>
> - [mailing or receiving] material containing false and fraudulent misrepresentations concerning the alleged threat of civil litigation to collect the false debt; and,
>
> - accepting payments from plaintiffs and class members including unlawful overcharges.
>
> - [defendant] referring to itself as "The Collection Firm of Franklin Collection Service, Inc." . . .

Doc. 1 ¶ 29.  Plaintiffs further cite to specific letters from defendant and identify the following representations as misleading: "that the debt owed by Calma was $992.25, $257.25 more than the original debt"; "that . . . only . . . $992.25 was being withdrawn from [Calma's] account"; and that "the debt owed to Urology [was] $1,155.02, when in fact the actual debt was $861.96."  Doc. 1 ¶ 31. Plaintiffs also contend that defendant gained by collecting more money than it was authorized through these alleged misrepresentations and threats of civil litigation. *Id*.  Based on these allegations, the court finds that plaintiffs have alleged sufficient facts to support a claim that defendant intentionally schemed to defraud

18

them of money by misleading them about the amount and character of the debt and that defendant utilized interstate mails or wires in furtherance of that scheme.

As an alternative argument, defendant contends that plaintiffs' factual allegations are premised on a purported breach of contract rather than fraud.  Doc. 11 at 11-14.  To support this argument, defendant notes that plaintiffs agreed to pay collection costs for their debts and argues that this case "hinges on the contractual entitlement to collection costs, not misrepresentations of the so-called 'original debt.'"  Doc. 11 at 11.  The court disagrees with this characterization of this action because plaintiffs' claims sound in tort – "fraudulent misrepresentations regarding the amount, character, and legal status of the debt being collected" and "the alleged threat of civil litigation."  Doc. 1 ¶ 29. Likewise, the court is not persuaded by defendant's contention that plaintiffs failed to allege facts indicating that defendant intended to participate in the alleged scheme to defraud debtors.  Doc. 11 at 18-19.  As plaintiffs point out, an intent to defraud may be inferred through "half-truths" and omissions.  Doc. 17 at 22. Indeed, the Eleventh Circuit has instructed that "[i]ntent to defraud need not be shown through active misrepresentation – material omissions can be fraudulent if they are intended to create a false impression."  *Langford v. Rite Aid of Alabama, Inc.*, 231 F.3d 1308, 1312 (11th Cir. 2000).  *See also United States v. Maxwell*,

579 F.3d 1282, 1301 (11th Cir. 2009) ("An intent to defraud may be found when the defendant believed that he could deceive the person to whom he made the material misrepresentation out of money or property of some value."); *United States v. Hawkins*, 905 F.2d 1489, 1496 (11th Cir. 1990) (holding that "[t]he Government need not produce direct proof of scienter in a fraud case . . . circumstantial evidence of criminal intent can suffice").  From plaintiffs' allegations that defendant mailed statements and notices that concealed the amounts of original debts and collection fees, a jury could reasonably conclude that defendant intended to defraud debtors.[7]  Therefore, the motion to dismiss Count II is denied.

> d.      *Count III - Conspiracy - 18 U.S.C. § 1962(d)*

In Count III, plaintiffs allege that "[defendant] and members of the enterprises' conspir[ed] to secure money due the plaintiffs and class members for their own use through this fraudulent scheme described above[, which] violates [§ 1962(d)]."  Doc. 1 ¶ 54.  Plaintiffs maintain that "numerous common facts and similar activities" imply the existence of a conspiracy and list the following to

---

[7]Whether defendant had a duty to disclose its calculation of the debt is premature at this stage of the litigation.  *See Langford*, 231 F.3d at 1313. ("Determinations as to whether a duty to disclose information exists must be made on a case by case basis, with appropriate attention given to the nature of the transaction and the relationship between the parties.").

support their contentions:

-   [Defendant] is compensated by each creditor based upon a contingency fee arrangement.

-   [Defendant] and each creditor conspire to add artificial and illegal profits to the amount of debts owed by the members of the class.

-   [Defendant] and each creditor conspire to use the telephone to collect these artificial profits and illegal charges.

-   [Defendant] and each creditor conspire to use the U.S. postal system to collect these artificial profits and illegal charges.

-   [Defendant] and each creditor conspire to use electronic mail, electronic payment systems, state and federal banking systems involved in interstate commerce, and other common means of collecting these artificial profits and illegal charges.

-   [Defendant] and each creditor use a common post office box to collect these artificial profits and illegal charges.

-   [Defendant] and each creditor conspire to add a percentage upcharge to each debt, rendering the collection charges per se unreasonable.

Doc. 1 ¶ 59.

Defendant contends that the conspiracy claim fails because plaintiffs' substantive claims under § 1962(a) and (c) fail or, alternatively, that plaintiffs failed to allege sufficient facts to support a RICO conspiracy.  Doc. 11 at 22-25. The court notes that "[a] defendant may be guilty of conspiracy even if he did not

21

commit the substantive acts that could constitute violations of §§ 1962(a), (b), or (c)." *United States v. Browne*, 505 F.3d 1229, 1264 (11th Cir. 2007).  Moreover, the Eleventh Circuit has instructed that "what *is* required to support a claim of RICO conspiracy is that plaintiffs allege an illegal agreement to violate a substantive provision of the RICO statute." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1269 (11th Cir. 2004) (emphasis original).  Indeed, it is well established that "[a] plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 950 (11th Cir. 1997) (quoting *United States v. Church*, 955 F.2d 688, 694 (11th Cir. 1992)).  "A plaintiff need not offer direct evidence of a RICO agreement; the existence of conspiracy may be inferred from the conduct of the participants." *American Dental*, 605 F.3d at 1293 (quotation marks and citation omitted).  However, the circumstantial evidence must demonstrate "that each defendant necessarily must have known that the others were also conspiring to participate in the same enterprise through a pattern of racketeering activity." *Browne*, 505 F.3d at 1264.  Specifically, as to a conspiracy to violate § 1962(c), "a plaintiff must demonstrate that a defendant 'objectively manifested, through words or actions, an

22

agreement to participate in the conduct of the affairs of the enterprise' through a pattern of racketeering activity." *Liquidation Com'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1353 (11th Cir. 2008) (quoting *United States v. Starrett*, 55 F.3d 1525, 1543 (11th Cir. 1995)).

Here, defendant contends that the majority of plaintiffs' allegations of a conspiracy are nothing more than legal conclusions that are insufficient under *Twombly* and *Iqbal*, and that the factual allegations fail to suggest any *agreement* to violate §§ 1962(a) and (c). Doc. 11 at 23. The court agrees that plaintiffs fail to sufficiently plead a conspiracy to violate § 1962(a). As discussed above, a violation of § 1962(a) requires reinvestment of racketeering proceeds into an enterprise apart from the enterprise conducting the racketeering activity. Plaintiffs have not alleged facts indicating such reinvestment or any agreement to undertake such conduct. Thus, to the extent plaintiffs allege conspiracy under § 1962(d) to violate § 1962(a), the motion is granted.

However, plaintiffs have outlined facts, which are sufficient at this stage in the litigation to infer the existence of an agreement between defendant and creditors to violate § 1962(c). For example, plaintiffs allege that *the creditors* "dictated directly or through delegation [the] methods by which [defendant] collected the debts," and that defendant's January 15, 2008, letter to Calma

instructed him to send a check in the inflated amount payable to UAB West, *the creditor*. Doc. 1 ¶¶ 15, 26.  From these allegations, the court infers that the creditors may have agreed to participate in the racketeering activity.  Whether plaintiffs can ultimately prevail on this claim is an issue that is not determinative at this juncture.  Rather, the relevant inquiry here is simply whether plaintiffs have pled a plausible claim.  As it relates to § 1962(c), the answer is yes.  Accordingly, the motion is denied as to the claim that defendant conspired to violate § 1962(c) in violation of § 1962(d).

  e.  *Count IV - 18 U.S.C. § 2*

  In Count IV, plaintiffs allege that defendant violated 18 U.S.C. § 2 by "aid[ing] and abett[ing] each of the other members of the enterprises in the commission of the predicate acts, in engaging in a pattern of racketeering activity, in violation of the RICO counts above."  Doc. 1 ¶ 61.  Defendant contends that Count IV fails because 18 U.S.C. § 2, the general criminal aiding and abetting statute, does not create a private right of action.[8]  Doc. 11 at 25-29.  Defendant recognizes that in *Cox v. Administrator U.S. Steel & Carnegie*, the Eleventh Circuit held that 18 U.S.C. § 2 creates an implied private cause of action for aiding

---

  [8]Title 18 U.S.C. § 2(a) provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

and abetting a RICO violation.  17 F.3d 1386, 1410 (11th Cir. 1994) ("One who aids and abets two predicate acts can be civilly liable under RICO.").  However, it notes that, shortly after *Cox*, the Supreme Court held that no private right of action exists for aiding and abetting securities fraud under Section 10(b) of the Securities Exchange Act of 1934.  *See Central Bank v. First Interstate Bank*, 511 U.S. 164, 191 (1994).  In so holding, the Supreme Court concluded that "when Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors."  *Id*. at 182.  The Court also generally noted that "Congress has not enacted a general civil aiding and abetting statute."  *Id*.  Thus, in light of *Central Bank*, defendant argues that the Supreme Court effectively overruled *Cox*.  Doc. 11 at 26 n.3.

To no surprise, plaintiffs disagree with defendant's reading of *Central Bank* and note that the Southern District of Florida addressed this issue and found that a plaintiff may maintain a cause of action for aiding and abetting a RICO violation under 18 U.S.C. § 2 because neither the Supreme Court nor the Eleventh Circuit has expressly overruled *Cox*.  *See In re Managed Care Litigation*, 135 F. Supp. 2d

1253, 1267 (S.D. Fla. 2001).[9]  The district court further supported this finding by

noting that the Supreme Court denied *certiorari* in *Cox* after deciding *Central*

*Bank*. *Id*. (citing *USX Corp. v. Cox*, 513 U.S. 1110 (1995)).

Defendant failed to reply to plaintiffs' arguments that *Cox* remains binding

precedent.  In light of this and because this is an unresolved issue that will

ultimately require a resolution by the Eleventh Circuit, the court declines to decide

it on a motion to dismiss.  Accordingly, the motion to dismiss Count IV is denied.

## B.    *FDCPA Claims – Counts V-VIII*

In Counts V-VIII, Bradley, individually, and on behalf of all others

similarly situated, alleges that defendant violated several provisions of the

FDCPA.  The FDCPA imposes civil liability on debt collectors who engage in

certain collection practices in order "to eliminate abusive debt collection practices,

to ensure that debt collectors who abstain from such practices are not

competitively disadvantaged, and to promote consistent state action to protect

consumers."  *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, --- U.S. --

-, 130 S. Ct. 1606, 1608 (2010).  To determine whether a debt collector's

collection practices violate the FDCPA, the Eleventh Circuit applies a "least-

---

[9]Notably, the court ultimately dismissed the aiding and abetting claim for plaintiffs'
failure to properly plead an enterprise.  *See In re Managed Care Litigation*, 135 F. Supp. 2d at
1267.

sophisticated consumer" standard.  *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010).  "The least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care. . . .  However, the test has an objective component in that while protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collections notices by preserving a quotient of reasonableness . . . ."  *Id.* (internal quotation marks and citations omitted).

    *1.    Counts V, VII, and VIII - 15 U.S.C. § 1692e*

In Counts V, VII, and VIII, Bradley alleges various violations of § 1692e, which provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> . . .
>
> (2) The false representation of -
>
> > (A) the character, amount, or legal status of any debt . . .
>
> (3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

27

. . .

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

. . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

. . .

(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

Doc. 1 ¶¶ 65, 69-73.

In Count V, Bradley alleges that defendant violated § 1692e(2)(A) because it "mischaracterized the amount of the debt owed by representing that the original debt plus the mark-up fee was the original balance" and, further, mischaracterized the legal status of the debt by threatening civil litigation.  Doc. 1 ¶ 66.  In Count VII, Bradley similarly alleges that defendant violated § 1692e(5) and (10) by making "misleading representations about the character, amount, and legal status of the debt."  *Id*. ¶ 70.  Lastly, in Count VIII, Bradley alleges that defendant violated § 1692e(3) and (14) by "referr[ing] to itself as 'The Collection Firm of Franklin Collection Service, Inc.' in an attempt to mislead Bradley into believing

[defendant] was a law firm." *Id*. ¶ 72.

Defendant first contends that it did not misrepresent the character or amount of the "debt" because it only had an obligation to provide Bradley with notice of his total debt, which included defendant's collection costs, not the various components of the $1,155.02 it alleges Bradley owes. Doc. 11 at 45-57. The Seventh Circuit rejected a similar argument in *Fields v. Wilber Law Firm*, 383 F.3d 562 (7th Cir. 2004), in which the plaintiff received a dunning letter from a lawyer that included an account balance combining her original debt and the attorney's fees. That court stated:

> In the original dunning letter, [defendant] listed an account balance that exceeded the principal obligation by $266.48. . . . Nowhere did [defendant] explain that it was seeking attorneys' fees of $250. . . . An unsophisticated consumer could reasonably wonder why her bill was now $388.54, even assuming she has saved the original contract for attorneys' fees. It would be difficult for such a consumer to understand how a relatively modest fee for services rendered had tripled in size.
>
> . . .
>
> Or, an unsophisticated consumer may have lost the bill and forgotten the amount of the debt completely. In this circumstance, the debtor . . . might logically assume that she simply incurred nearly $400 in charges. . . . One simple way to comply with § 1692e and § 1692f in this regard would be to itemize the various charges that comprise the total amount of the debt.

*Id*. at 566. The court thus determined that the plaintiff's allegations were

sufficient to state a claim under § 1692e.  *Id.*; *see also Dougherty v. Wells Fargo Home Loans, Inc.*, 425 F. Supp. 2d 599, 607-8 (E.D. Pa. 2006) (finding that the plaintiff stated a claim under § 1692e when attorney's fees and costs were listed as "recoverable corporate advances"); *Dowdy v. Solutia Healthcare TAS, Inc.*, 2006 WL 3545047, at *8-9 (M.D. Tenn. Dec. 8, 2006) (denying defendant's summary judgment on plaintiff's § 1692e claims when defendant's letter to debtor did not itemize collection costs separately from the principal balance).

Here, defendant's letters to Bradley merely stated that he owed $1,155.02, without specifying the various charges comprising the total amount.  Even after Bradley questioned the amount, and specifically stated that he only owed $816.96 and demanded proof of the debt, defendant still refused to provide the accounting and stated again only the $1,155.02, figure.  These circumstances are precisely why courts have refused to dismiss or grant summary judgment on similar facts. Agreeing with the reasoning of these cases, the court finds that Bradley sufficiently states claims under § 1692e(2)(A) and (10) in Counts V and VII to survive a motion to dismiss.

Defendant also contends that Count VII fails to allege that it threatened legal action against Bradley.  Specifically, defendant contends that its warning in the January 12, 2010, letter to "BEWARE, OUR CLIENT, MAY AUTHORIZE A

LAW FIRM TO FILE A CIVIL LAWSUIT AGAINST YOU," does not constitute a threat of legal action.  Doc. 11 at 44-47.  Applying the Eleventh Circuit's least-sophisticated standard, the court finds that a naive consumer may read this language as a threat of legal action.  *See also LeBlanc*, 601 F.3d at 1195 (finding that whether a dunning letter could reasonably be perceived as a "threat to take legal action" was best left to the jury).  Thus, Bradley sufficiently states a claim under § 1692e(5) in Count VII to survive a motion to dismiss.

As to Count VIII, defendant contends that Bradley fails to state a claim under § 1962e(3) because its letters did not imply that they were from an attorney.  As noted above, § 1692e(3) prohibits a debt collector from making a "false representation or implication that any individual is an attorney or that any communication is from an attorney."  Defendant contends that "even the least sophisticated consumer could not conclude that [it] falsely implied the letters were sent from an attorney."  Doc. 11 at 49.  In contrast, plaintiffs contend that the least-sophisticated consumer could easily assume that defendant was a law firm based on its reference to itself as "The Collection Firm of Franklin Collection Service," and that this is issue is best left to a jury.  Plaintiffs further note that defendant referred to itself as merely "Franklin Collection Service, Inc.," in other correspondence with Bradley.

Whether the letters implied that they were from an attorney is an issue the court cannot address at the juncture, without the benefit of the parties' respective discovery on this issue.  Therefore, the court finds that Bradley sufficiently states a claim under § 1692e(3) in Count VIII to survive a motion to dismiss.[10]

2.    *Count VI - 15 U.S.C. § 1692f(1)*

In Count VI, Bradley alleges that defendant violates § 1692f(1) by mischaracterizing the nature, amount, and legal status of debts.  Doc. 1 ¶ 68. Section 1692(f) provides:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section: (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

Defendant contends that Bradley fails to state a violation of § 1692f(1) because he agreed to pay "all costs of collection" without restriction or limitation. Doc. 11 at 47-49.  Bradley counters that, although he agreed to pay "all costs of collection," there is no evidence indicating that the collection charge of $293.06 on the debt of $861.96 represents the actual "costs of collection."  Doc. 17 at 41.  The court

---

[10]Notably, defendant does not contend that Bradley's claim in Count VIII that defendant violated § 1692e(14) is due to be dismissed.  Therefore, this claim remains.

agrees that Bradley sufficiently states a claim under § 1692(f)(1) because ascertaining whether the $293.06 charge reflects "all costs of collection" is premature at this stage of the litigation. *See e.g., Fields*, 383 F.3d at 566 ("It would be difficult for . . . [an unsophisticated] consumer to understand how a relatively modest fee for services rendered had tripled in size."). Therefore, the motion to dismiss Count VI is denied.

## C.    *State -Law Claims – Counts IX and XI-XIII*

In Counts IX and XI-XIII, plaintiffs allege state-law claims of unjust enrichment, civil conspiracy, aiding and abetting, and fraud. Doc. 1 ¶¶ 74-97.

### 1.    *Count XIII - Fraud*

Defendant first contends that plaintiffs failed to plead the essential elements of a fraud claim. Doc. 11 at 31-35. Under Alabama law: "The elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation." *Mantiply v. Mantiply*, 951 So. 2d 638, 653 (Ala. 2006) (quotation marks and citation omitted). Here, plaintiffs allege that defendants falsely represented the amount they owed, that they relied on the alleged misrepresentation and paid the inflated amount, and suffered resulting damages. Therefore, the court disagrees with defendant's contention that plaintiffs failed to

identify any false representation it made to them or to allege that they reasonably relied upon the alleged misrepresentations and suffered resulting damages.

As an alternative argument, defendant contends Calma's fraud claims are barred by the two-year statute of limitations, § 6-2-38(l), Ala. Code 1975.[11]  Doc. 11 at 34-35.  Defendant notes that Calma sued it and others on February 27, 2008, asserting similar fraud-based claims, but waited until June 17, 2010 to file the instant action.  *See Calma I*, No. 08-cv-00350-LSC (N.D. Ala., filed Feb. 27, 2008).  Moreover, because the limitations period for fraud claims begins to run "when the plaintiff discovers, or should have discovered, the fraud," *Kelly v. Connecticut Mut. Life Ins. Co.*, 628 So. 2d 454, 460 (Ala. 1993), defendant contends that Calma's prior action evidences that he discovered the fraud more than two years before filing the present action.

Calma responds that the pendency of *Calma I* tolled the statute.  *See* 28 U.S.C. § 1367(d) ("The period of limitations for . . . [supplemental claims] shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.").  Unfortunately for Calma, § 1367(d) is irrelevant to the fraud claim because, although he alleged fraudulent

---

[11]Section 6-2-38(l), provides: "All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."

conduct by defendant to support his RICO claims, he did not plead a state-law fraud claim in *Calma I. See Rester v. McWane, Inc.*, 962 So. 2d 183, 187 (Ala. 2007) (holding that "§ 1367 makes no allowance for tolling the statute of limitations for state-law claims that are not asserted in the federal action"); *Calma I*, No. 08-cv-00350-LSC, Doc. 1. Consequently, the fraud claim is barred by the statute of limitations as to Calma and remains as to Bradley. Therefore, the motion to dismiss Count XIII is granted in part and denied in part.

   2.   *Count IX - Unjust enrichment*

   In Count IX, plaintiffs allege that "[defendant] has been unjustly enriched by its collection of the misrepresented debt." Doc. 1 ¶ 76. Defendant contends that dismissal is warranted against Bradley because "the Complaint does not state that Bradley has even paid any money to [defendant]." Doc. 11 at 39. However, as discussed in footnote two *supra*, the complaint, in fact, alleges that defendant gained money from Bradley. *See* Doc. 1 ¶ 31. Therefore, the motion to dismiss Bradley's unjust-enrichment claim is denied.

   As to Calma, defendant contends that the claim is also barred by the statute of limitations. However, unlike his fraud claim, Calma pled an unjust-enrichment claim in the first action, and, therefore, 28 U.S.C. § 1367(d) suspended the accrual of time. The plain language of § 1367(d) provides that "'the clock is stopped and

35

the time is not counted – while the federal court is considering the claim and for thirty days after the claim is dismissed.'"[12] *In re Vertrue Marketing and Sales Practices Litigation*, 712 F. Supp. 2d 703, 723 (N.D. Ohio 2010) (quoting *Goodman v. Best Buy*, 755 N.W.2d 354, 357 (Minn. Ct. App. 2008)).  *See also Jinks v. Richland, S.C.*, 538 U.S. 456, 463-64 (2003) (noting that "state-law claims asserted under § 1367(a) will not become time barred while pending in federal court"); *Gilder-Lucas v. Elmore Cnty. Bd. of Educ.*, 399 F. Supp. 2d 1267, 1274 n.11 (M.D. Ala. 2005) (noting that "[§] 1367(d) provides for *at least* a 30-day tolling of any applicable statute of limitations") (emphasis added).  Here, when the court ignores the period when *Calma I* was pending (*i.e.*, February 27, 2008 until February 3, 2009), it is clear that Calma filed the instant action within two years of the date defendant mailed him the letter that triggered this action.  In other words, defendant has not established that Calma's unjust-enrichment claim is barred by the statute of limitations.  Accordingly, the motion to dismiss Calma's unjust-enrichment claim is also denied.

---

[12]Plaintiffs note that the Supreme Court of Alabama appears to have taken the view that § 1367(d) tolls only the expiration of the statute of limitations, not the accrual of time, *see Weinrib v. Duncan*, 962 So. 2d 167 (Ala. 2007), however, this view is not binding on this court and conflicts with the plain language of § 1367(d).

Case 5:10-cv-01537-AKK   Document 19   Filed 03/24/11   Page 37 of 40

### 3. Count XI - Civil Conspiracy

In Count XI, plaintiffs allege that defendant and members of the enterprises "conspired with each other for the purpose of engaging in unlawful conduct, for unlawful purposes, including acts of fraud, the furtherance of their schemes, and for the purpose of engaging in otherwise unlawful conduct by wrongful conduct and means." Doc. 1 ¶ 84. Defendant contends that this claim fails to plead the essential elements of conspiracy under Alabama law.[13] Doc. 11 at 39-41. In Alabama, "to succeed on a civil-conspiracy claim, a plaintiff must prove a concerted action by two or more people that achieved an unlawful purpose or a lawful end by unlawful means." *Luck v. Primus Auto. Fin. Servs., Inc.*, 763 So. 2d 243, 247 (Ala. 2000). For the same reasons the court denied the motion to dismiss the RICO-conspiracy claim to violate § 1962(c), the motion to dismiss Count XI is denied.

### 4. Count XII - Aiding and Abetting

In Count XII, plaintiffs allege a state-law claim of aiding and abetting against defendant. Doc. 1 ¶¶ 88-92. Defendant contends that there is no private cause of action for "aiding and abetting" under Alabama law, and plaintiffs fail to

---

[13]Alabama recognizes the common law claim of civil conspiracy as a substantive tort. *See Purcell Co. v. Spriggs Enters., Inc.*, 431 So. 2d 515, 522 (Ala. 1983).

provide any legal basis for such a claim.  *See Continental Cas. Co. v. Compass Bank*, 04-0766-KD-C, 2006 WL 566900, at *11 (S.D. Ala. Mar. 6, 2006) ("Unlike other states, it does not appear that Alabama recognizes the claim of aiding and abetting common law torts."); *Estate of Rodriquez v. Drummond Co., Inc.*, 256 F. Supp. 2d 1250, 1258 (N.D. Ala. 2003) ("plaintiffs provided no legal basis for any such claim under Alabama law, and the court knows of none").  Therefore, Count XII is dismissed for failure to state a claim.

## D.     *Declaratory and Injunctive Relief - Count X*

Finally, in Count X, plaintiffs seek declaratory and injunctive relief under § 18 U.S.C. § 1964(a).[14]  As injunctive relief, plaintiffs seek "a permanent injunction ordering [defendant] to cease and desist its practice of adding overcharges to the debt owed and threatening civil litigation in an effort to collect the excess amounts . . . ."  Doc. 1 ¶ 82.  As declaratory relief, plaintiffs seek "a declaration that

---

[14]Title 18 U.S.C. § 1964(a) provides:

The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

[defendant's] use of a percentage upcharge on debts being collected is *per se* unreasonable and unconscionable" and that "[defendant] is illegally holding itself out as a law firm." *Id*.

"A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (*en banc*) (*per curiam*). Additionally, defendant notes that "[a] plaintiff has standing to seek declaratory or injunctive relief only when he 'allege[s] facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'" *Bowen v. First Family Fin. Servs. Inc.*, 233 F.3d 1331, 1340 (11th Cir. 2000) (quoting *Malowney v. Federal Collection Deposit Grp.*, 193 F.3d 1342, 1346-47 (11th Cir. 1999)). Here, plaintiffs have not specifically alleged how they or class members will likely suffer irreparable injury without the requested declaratory and injunctive relief. Moreover, the law is well established that "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."

*Northeastern Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990).  Because plaintiffs have failed to allege a sufficient likelihood of future harm or the absence of an adequate remedy at law, they have failed to state a claim for declaratory or injunctive relief.  Therefore, Count X is dismissed.

## IV.  CONCLUSION

For the reasons set forth above, the motion to dismiss is granted in part and denied in part.  Both plaintiffs' claims in Counts I, III (to the extent it alleges a conspiracy to violate § 1962(a)), X, and XII, and Calma's state-law claim of fraud in Count XIII, are dismissed for failure to state a claim.  In all other respects, the motion is denied.

DONE this 24th day of March, 2011.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE