FILED
2013 Mar-28  PM 03:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN  DIVISION

| | | |
|---|---|---|
| **MELVIN BRADLEY, KEVIN A CALMA, and DIANNE RODEN BRADLEY as executrix for the estate of Melvin Bradley,** | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action Number **5:10-cv-01537-AKK** |
| **v.** | ) ) | |
| **FRANKLIN COLLECTION SERVICE, INC.,** | ) ) ) ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Melvin Bradley[1] and Kevin Calma, (collectively "Plaintiffs"), incurred medical debts at North Alabama Urology, P.C. ("Urology") and UAB Medical West ("UAB West"), respectively.  Because Plaintiffs failed to pay their debts, Urology and UAB West referred the accounts to Defendant Franklin Collection Service, Inc.  ("Franklin").  As part of the referral, Urology and UAB West added a charge for collection fees to Plaintiffs' accounts – leading Plaintiffs

---

[1] The court substituted Diane Roden Bradley as a party for Melvin Bradley, as executrix of Melvin Bradley's estate, after the court received a suggestion of death notice.  Doc. 53, 60. Because Mrs. Bradley is standing in place of her deceased husband, the court will not differentiate between the two in its opinion and will only make reference to "Bradley."

1

to file this action against Franklin under state law, the Fair Debt Collection Practices Act ("FDCPA"), and the Racketeer Influenced and Corrupt Organizations Act ("RICO").  *See* doc. 1.  Bradley and Franklin have filed cross motions for summary judgment, docs. 61 and 77, and fully briefed each motion, docs. 66, 69, 78, 94, and 96.  For the reasons stated more fully below, Bradley's partial motion for summary judgment is **DENIED** and, except as to Calma's unjust enrichment claim, Franklin's motion is **GRANTED**.

## I. SUMMARY JUDGMENT STANDARD OF REVIEW

Under Rule 56(c)(2) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of proving the absence of a genuine issue of material fact.  *Id*. at 323.  The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for

2

trial." *Id*. at 324 (citation and internal quotation marks omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor).  Any factual disputes will be resolved in Plaintiffs' favor when sufficient competent evidence supports Plaintiffs' version of the disputed facts.  *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).  Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*,

3

477 U.S. at 252)).

## II. <u>FACTUAL BACKGROUND</u>

### A.   **Calma and UAB West**

UAB West is a healthcare institution operating under the control of the

University of Alabama at Birmingham Health System ("UAB").  Doc 79-7 at 2-3;

*see also* doc. 79-8.  UAB manages healthcare delivery and billing for its hospitals,

including UAB West.  *Id*.  UAB and UAB West contracted with  Franklin to collect

unpaid medical bills.  Doc. 82-1 *SEALED* at 1-2; Doc. 73-4 at 4.  UAB West's

agreement with Franklin directed Franklin to add a 30% collection charge to all

accounts UAB West referred for collection and gave Franklin the right to pursue

collection lawsuits on UAB West's behalf.  Doc.73-20 at 16-17, 33.  Although

UAB West agreed to raise the collection charge to 35% in 2006 and drafted an

appropriate agreement, UAB West and Franklin continued to operate under the

terms of the original contract.  Doc. 73-20 at 20.

In 2007, Calma incurred a $735 bill when he took his daughter to UAB West

for treatment.  Doc. 1 at ¶ 15; Doc. 1-1 at 1.  When Calma failed to pay the bill,

UAB West sent Calma three separate statements and warned Calma that, pursuant

to their agreement,[2] UAB West would send his account to a collection agency if he

failed to pay.  Doc. 79-6 at 50, 81.  Eventually, UAB West sent Calma's account to

Franklin for collection.  Doc. 79-6 at 82.

On December 12, 2007, Franklin sent Calma a letter directing him to submit

a check to it for $992.25 made payable to UAB West.  Doc. 79-6 at 82.  Franklin

sent a second letter a month later, again requesting a $992.25 payment.  After he

received the second letter, Calma emailed his insurance company regarding the

"severely past due" bill.  Doc. 79-6 at 50, 19.  That same day, Calma spoke with

Franklin and stated that "if I had known that I did owe something, obviously I

would've paid it at that point."  Doc. 79-6 at 26.  Calma testified that "I needed to

pay [the bill] because I was trying to secure a home loan . . . and didn't want them

to turn this over to a credit bureau and it affect my credit score and ultimately my

chances of getting my home loan."  *Id*.  In light of his desire to avoid a negative

credit report, Calma asked "when's the latest I have to have this thing paid so it

doesn't hit my credit score?" and  authorized a post-dated full payment when

Franklin responded that he needed to at least schedule a payment that day.  *Id*. at

---

[2] The agreement Calma signed with UAB West stated, in part: "I agree that if this account
is not paid when due, and the hospital should retain an attorney or collection agency for
collection, I agree to pay all costs of collection including reasonable interest, reasonable
attorney's fees (even if suit is filed) and reasonable collection agency fees."  Doc. 79-6 at 45.

26-27.  Ultimately, Franklin debited a total of $1002.25 from Calma's bank account – the $992.25 owed plus a $10.00 convenience fee for accepting the payment over the telephone.  Doc. 79-6 at 57-58.  However, Franklin failed to disclose the convenience fee and purportedly reprimanded the employee at fault. Doc. 80-1 *SEALED* at 1; Doc. 73-14 at 23.  Franklin contends that the fee covers its transactional costs for processing electronic payments. Doc. 73-14 at 24.

## B.    Bradley and North Alabama Urology, PC

Urology is a healthcare provider that also uses Franklin to collect unpaid bills.  Doc.1 at ¶ 21.  The collection contract between Urology and Franklin stipulated for Urology to add 33 1/3% to a debt prior to transferring it to Franklin. Doc. 61-3 at 16-17; *see also* doc. 62-1*SEALED* at 3-13.  The contract also stipulated that Franklin is entitled to 30% of the total collected from each debt.  *Id*.

Bradley visited Urology and signed a patient registration form in April 2009 stating, in part, that "[i]n the event of non-payment, either by insurance or myself, I agree to pay all costs of collection, including a reasonable attorney fee in the event it is necessary to employ an attorney to enforce any provision of this contract." Doc. 61-2 at 5, 35.  Thereafter, Bradley incurred a $861.96 bill for treatment.  Doc. 61-2 at 8, 36.  When Bradley failed to pay the bill, Urology submitted it to Franklin for collection.  Doc. 62-1 *SEALED* at 17.

6

Franklin sent Bradley a letter on December 11, 2009 to notify him that Urology had turned over his debt for collection and that Bradley owed $1155.02. Doc. 61-7 at 11; Doc. 61-2 at 8.  The letter identified Franklin as "The Collection Firm of Franklin Collection Service, Inc.," but directed Bradley to make checks payable to "Franklin Collection Service, Inc." and was signed "Sincerely, Franklin Collection Service, Inc." *Id*.  The letter also stated  "BEWARE, OUR CLIENT, PENDING NOTIFICATION, MAY AUTHORIZE A LAW FIRM TO FILE A CIVIL LAWSUIT AGAINST YOU." *Id*. (emphasis in original).  Perhaps in response to an inquiry from Bradley, Franklin requested that Urology verify the debt amount in late December. Doc.61-8 at 6, 14-16.  In response, Urology faxed an itemized statement showing that Bradley's debt was $861.96, plus a $293.06 collection fee for a total debt of $1155.02. *Id*. at 16-17.

After retaining counsel when he received Franklin's letter, Bradley called Urology and attempted to pay the original $861.96 debt.  Doc. 61-2 at 14. However, Urology informed him it had already turned the debt over to Franklin and added a $293.06 collection fee and that Bradley would still owe the collection fee even if he paid the original balance.  Doc. 61-2 at 9; Doc.67-3 at 4; Doc.61-8 at 7-8, 16.  As a result, Bradley opted to "just deal with collection company then."  Doc. 61-2 at 10.

7

Thereafter, Bradley called Franklin to contest the debt amount and sent Franklin a copy of his original Urology statement showing only the $861.96.  Doc. 61-2 at 14, 39.  Bradley informed Franklin that he would pay the $861.96 balance when Franklin sent him a corrected statement.  *Id*.  Franklin, in turn, sent Bradley an "Itemization Verification and Validation of Debt" letter that listed both the original and current balance as $1155.02.  Doc.61-4 at 19; Doc.63-1 *SEALED* at 1-2; Doc.61-2 at 14-15, 40.  However, in light of Bradley's continued assertion that he did not owe $1155.02, Franklin contacted Urology again to verify the debt. Doc. 67-3 at 4; Doc. 61-8 at 16-17.  Urology confirmed the debt and added that it had informed Bradley that he owed a collection fee pursuant to the agreement Bradley signed.  *Id*.  Franklin then sent Bradley another letter threatening litigation if Bradley failed to pay. Doc.61-11 at 28; Doc.61-12 at 23; Doc. 61-2 at 22, 33, 41; Doc. 61-7 at 12.  To avoid being sued, Bradley paid the $1155.02 and reserved his right to recover overcharges.  Doc. 61-2 at 14, 38.  Franklin remitted $808.52 to Urology and retained $346.51, or 30%, as payment for services rendered.  Doc. 61-3 at 27.

### III. ANALYSIS

Plaintiffs assert RICO, FDCPA, and state law claims against Franklin and assert that they are due summary judgment on their FDCPA claims.  Franklin

disagrees and asserts that it is due summary judgment on all claims.  The court will address the RICO claims in section A, followed by the FDCPA claims in section B and the state law claims in section C.

## A.      Racketeer Influenced and Corrupt Organizations Act[3]

Plaintiffs allege §§ 1962(c) and (d) and 18 U.S.C. § 2 RICO violations. Doc.1 at ¶ 51.  RICO's civil provision provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c).  "Thus, to recover on a civil RICO claim, the plaintiffs must prove, first, that § 1962 was violated; second, that they were injured in their business or property; and third, that the § 1962 violation caused the injury." *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1396 (11th Cir. 1994) (citation omitted).

### 1.      § 1962(c)

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign

---

[3] The court dismissed Plaintiffs' RICO claims under 18 U.S.C. § 1962(a) and § 1962(d), to the extent it alleges a conspiracy to violate (a).  *See* docs. 19, 20.

commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).  The court addresses these elements and the parties' contentions below.

a.      Existence of a RICO "Enterprise"

The term enterprise "include[s] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  Given this expansive reach, the Supreme Court explained that "an enterprise includes any union or group of individuals associated in fact and that RICO reaches a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. U.S.*, 556 U.S. 938, 944 (2009) (internal citation and quotation marks omitted).  The existence of an enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.* at 945.

Plaintiffs allege that Franklin is a member of the "UAB Enterprise" and the "Urology Enterprise."  These enterprises allegedly conspired to mark-up patient debts by an undisclosed, unreasonable percentage and pass off this increased amount as the original balance so that the enterprise members receive additional

charges they are not otherwise entitled to receive.  Doc. 1 at ¶¶ 14, 21.

### i.   Governmental Entities

Franklin challenges Plaintiffs' contention, in part, on the basis that UAB West is a governmental entity that cannot be a member of an association-in-fact enterprise.  To support its contention, Franklin relies on cases holding that health care authorities, including affiliates of the UAB System, are governmental entities entitled to state immunity.  *See Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1461 (11th Cir. 1991); *Health Care Auth. for Baptist Health v. Davis*, 2011 WL 118268 (Ala. 2011); *Tenn. Valley Printing Co. v. Health Care Auth. of Lauderdale Cnty*, 61 So. 3d 1027 (Ala. 2010).  Franklin overlooks, however, that immunity from suit does not prevent the governmental entity from being part of an enterprise. *See U.S. v. Stratton*, 649 F.2d 1066, 1074 (5th Cir. 1981) (finding that RICO's definition of "enterprise" is broad enough to include government entities). Therefore, the court rejects Franklin's contention that UAB West's status as a government entity precludes its association with Franklin from constituting a RICO enterprise.

### ii.   Illegal Purpose

Franklin asserts next that Plaintiffs cannot show the illegal purpose necessary to establish the existence of an "enterprise."  Although RICO defines

11

"enterprise" broadly, Eleventh Circuit "precedent indicates that a RICO enterprise exists where a group of persons associates, formally or informally, *with the purpose of conducting illegal activity*." *U.S. v. Hewes*, 729 F.2d 1302, 1311 (11th Cir. 1984) (*quoting U.S. v. Elliott*, 571 F.2d 880 (5th Cir.), *cert. denied*, 439 U.S. 953 (1978)) (emphasis added).  Plaintiffs do not dispute that the underlying business relationship is legitimate, but allege nonetheless that Franklin conspires with creditors to illegally "collect[] amounts far in excess of the original debts without disclosing the nature and the extent of . . . additional charges."  Doc. 1 at ¶ 13. Plaintiffs further allege that this illegal practice results in Franklin and its clients obtaining more money and property than they are rightfully or legally entitled to from debtors.  Doc. 1 ¶¶ 13, 25, 26.  In other words, Plaintiffs assert that Franklin is using its legitimate business as a vehicle for the illegal purpose of obtaining excess money from debtors.

Although such an allegation may ordinarily satisfy the "purpose of conducting illegal activity" requirement, *Hewes*, 729 F.2d at 1311, there is undisputed evidence here that Franklin lacked an "illegal purpose" and made good faith efforts to ensure it complied with state and federal laws.  Doc. 61-4 at 6; Doc. 61-6 at 25.  For example, Franklin hired counsel to draft contracts for it to use that complied with applicable law.  Doc.61-5 at 17-18.  Franklin's counsel also

periodically reviewed the contracts and drafted and reviewed debtor letters.  Doc. 61-4 at 4; Doc. 61-5 at 17-18; Doc. 61-6 at 25.  Moreover, while Franklin sets the fee it charges for its services, the clients actually determine the collection fee Franklin charges delinquent debtors.  Doc. 61-3 at 16-17; Doc. 62-1*SEALED* at 3-13; Doc.73-20 at 16-17, 33.  In fact, the clients add the collection fee to the delinquent accounts prior to sending them to Franklin for collection.  Doc. 61-3 at 16-17; Doc. 62-1*SEALED* at 3-13; Doc.73-20 at 16-17, 33.  In short, based on the uncontroverted evidence showing that Franklin's purpose was merely to collect its clients' debts in accordance with the law, Plaintiffs failed to show the existence of a RICO "enterprise" involving Franklin.

### b.    *Predicate Acts: Mail and Wire Fraud*

In order to establish a RICO violation, Plaintiffs must prove the existence of a "pattern of racketeering activity" through predicate acts such as mail or wire fraud, *see* 18 U.S.C. § 1962(c), which "consist of intentional participation in a scheme to defraud another of money or property" through use of the mails or electronic forms of communication. *Beck v. Prupis*, 162 F.3d 1090, 1095 (11th Cir. 1998).  "Mail and wire fraud are analytically identical save for the method of execution," *U.S. v. Bradley*, 644 F.3d 1213, 1238-39 (11th Cir. 2011), and occur "when a person (1) intentionally participates in a scheme to defraud another of

money or property and (2) uses the mails or wires in furtherance of that scheme." *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (*quoting Pellitier v. Zweifel*, 921 F.2d 1465, 1498 (11th Cir. 1991). "To demonstrate a violation of the mail or wire fraud statutes, Plaintiffs must show that [a defendant] had a conscious, knowing intent to defraud and that a reasonably prudent person would have been deceived by its misrepresentations." *Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F.3d 1292, 1306 (11th Cir. 2003).

Plaintiffs raise four grounds to support their contention that they satisfy the "conscious, knowing intent to defraud" element: that Franklin (1) misstated the amount of their debts, (2) misrepresented the character of their debts by failing to itemize, (3) falsely threatened civil litigation, and (4) misleadingly used letterhead suggesting Franklin was a law firm.  Doc. 78 at 19-20.  However, none of these contentions carry Plaintiffs' burden.

    i.  Alleged Misstatement of Plaintiffs' Debt Amounts

Plaintiffs' allegation that Franklin misstated their debt is based on Franklin's inclusion of the collection charges in the total amount owed.  Plaintiffs contend that the inclusion amounts to a misrepresentation sufficient to adequately demonstrate mail or wire fraud.  However, the evidence, viewed in a light most

favorable to Plaintiffs, shows that, although their original bills totaled $735 and

$861.96 for Calma and Bradley respectively, UAB West directed Franklin to

collect $992.25 from Calma and Urology directed Franklin to collect $1155.02

from Bradley.  Doc.73-20 at 20; Doc. 79-6 at 82; Doc. 61-3 at 16-17; Doc. 67-3 at

4; Doc. 61-8 at 16-17.  In other words, contrary to Plaintiffs' contention, UAB

West and Urology added the collection fee to the balance owed before transmitting

the debts to Franklin for collection.  Moreover, when Franklin inquired, Urology

and UAB West verified the "amounts due" as $992.25 and $1155.02 – further

demonstrating that Urology and UAB West included the collection fees in the

amounts they asked Franklin to collect.  *See* docs. 67-3 at 4, 61-8 at 16-17, 73-20 at

16-17 and 20, 79-6 at 82.  Based on these facts, Plaintiffs have failed to

demonstrate that Franklin misstated the amount of Plaintiffs' debts.

ii.    Alleged Mischaracterization of Plaintiffs' Debts

Alternatively, Plaintiffs allege that Franklin's failure to itemize the balance

to show the amount added for a collection fee is a material misrepresentation.  Such

an omission can form the basis for mail and/or wire fraud-based RICO liability if

the defendant had an affirmative duty to disclose the information and "if [the

omissions] are intended to create a false impression." *Langford v. Rite Aid of Ala.,*

*Inc.*, 231 F.3d 1308, 1312 (11th Cir. 2000); *Kemp v. American Tel. & Tel. Co.*, 393

F.3d 1354, 1359 (11th Cir. 2004), citing *Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 521 (11th Cir. 2000).  A duty to disclose can be created judicially or "where there is a special relationship of trust between the parties, or may be based on other circumstances." *Kemp*, 393 F.3d at 1359.  Generally, however,  a creditor-debtor relationship does not create a duty to disclose absent a showing of some other special relationship.  *See, e.g., Bank of Red Bay v.  King*, 482 So. 2d 274, 285 (Ala. 1985); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773 (11th Cir. 2005). Instead, to determine whether the circumstances impose a duty to disclose, the court evaluates factors such as "the relationship of the parties[,] the relative knowledge of the parties[, and] the plaintiff's opportunity to ascertain the undisclosed fact[.]" *Castleberry*, 408 F.3d at 787.

Unfortunately for Plaintiffs, they failed to show the existence of any circumstances that created an affirmative duty for Franklin to disclose the amount of the collection fees through itemization.  As a threshold matter, the court notes that Calma and Bradley each signed contracts agreeing to pay collection costs. Thus, even if they disagreed with the actual amount Franklin requested from them, they had notice from their healthcare provider that their original debt would include a collection fee.  *See* docs. 79-6 at 45 and 61-2 at 5, 35.  More importantly, Plaintiffs could, and in Bradley's case did, inquire about the increased debt amount

16

by contacting Franklin and the health care provider who originated the debt.

Indeed, Urology informed Bradley that it added a $293.06 collection fee to his

original bill and that he was responsible for paying the full $1155.02 because

Urology had to turn the account over to collections.  Doc. 61-8 at 7; Doc. 61-2 at 9.

Therefore, the court finds that Plaintiffs have failed to establish that Franklin had a

duty to disclose the added collection fee or that the failure to itemize is a sufficient

misrepresentation to warrant RICO liability for mail and wire fraud.

iii.    Alleged Improper Threat of Civil Litigation

Plaintiffs allege next that Franklin committed mail and wire fraud by falsely

threatening civil litigation because "[t]he facts are undisputed that [UAB West] had

not given [Franklin] authority to file against Calma specifically as the January 15,

2008 letter represented" and "[w]ith regard to Bradley, regardless of whether

[Franklin] had the right to pursue a lawsuit on Urology's behalf, with prior

approval from Urology, [Franklin] made the threat of civil litigation when counsel

had not been retained[.]"  Doc. 94 at 24-25.  The court finds these contentions

unavailing.  The uncontroverted evidence shows that UAB West expressly

authorized Franklin to pursue civil lawsuits on its behalf in connection with its

collection efforts.  Doc. 73-20 at 16-17, 33.  Under their agreement, Franklin may

file suit if necessary and without first having to seek permission from UAB West to

file a lawsuit against each individual debtor.  Therefore, Franklin's failure to seek specific permission to sue Calma is irrelevant and its letter stating it would file a civil lawsuit if Calma failed to pay was not a misrepresentation.  Likewise, Urology authorized Franklin to file civil lawsuits against debtors, albeit with prior approval. Doc. 61-3 at 16-17.  Nonetheless, that Franklin needed approval from Urology to file suit does not mean that it needed to first retain counsel before informing Bradley that one potential consequence of his failure to pay his debt is litigation. After all, the statement is an accurate factual representation because one consequence for failing to pay may indeed be litigation.  In fact, under the FDCPA, a creditor  may inform a debtor that it will file a lawsuit for failure to pay where, as here, it legally can do so.  *See* 18 U.S.C. § 1692e(5); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1196 (11th Cir. 2010).   Accordingly, Franklin's use of language regarding possible civil suits does not qualify as a misrepresentation.

iv.    Alleged Misrepresentation of Franklin as a Law Firm

Plaintiffs allege that Franklin misrepresented itself as a law firm in its letters to Bradley when it used letterhead that contained the term "The Collection Firm of Franklin Collection Services, Inc."  Doc. 94 at 25.  Apparently, Plaintiffs contend that inclusion of the term "the collection firm" next to the actual name of Franklin is misleading and only draws one conclusion, i.e. that Franklin is a law firm.  The

court disagrees because the term "collection firm" is merely a descriptive term used to explain Franklin's business.  Indeed, terms such as "firm" or "associates," although often used by attorneys, are used by a wide variety of businesses that are not engaged in the practice of law.  *See In re Cheaves*, 439 B.R. 220, 227 (Bankr. M.D. Fla. 2010).  Moreover, "[t]o demonstrate a violation of the mail or wire fraud statutes, Plaintiffs must show . . . that a reasonably prudent person would have been deceived by [the defendant's] misrepresentations."  *Green Leaf Nursery*, 341 F.3d at 1306.  For that reason, a reasonable consumer is expected to read an entire collection notice and place its descriptive terms in context.  *See Campazano-Burgos v. Midland Credit Mgmt.*, 550 F.3d 294, 299 (3d Cir. 2008); *LeBlanc v. Unifund CCR Partners, GP*, 552 F. Supp. 1327, 1336 (M.D. Fla. 2008), *rev'd in part, on other grounds*, 601 F.3d 1185 (11th Cir. 2010).   Here, the term "The Collection Firm of Franklin Collection Service, Inc." is not misleading when put in context with the rest of the letter that clearly identifies the sender as "Franklin Collection Service" and references unequivocally that the client may authorize "a law firm" to institute a lawsuit, further implying that the sender of the letter, "The Collection Firm of Franklin Collection Service, Inc.," is not a law firm.  Based on these facts, the court finds that Plaintiffs have failed to establish that Franklin misrepresented itself as a law firm.

c.    *Pattern of Racketeering Activity*

To establish a *pattern* of racketeering activity sufficient to create liability under RICO, "a plaintiff must show at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity." *American Dental Ass'n*, 605 F.3d at 1291.  Because the court finds that Plaintiffs failed to demonstrate that Franklin engaged in the predicate acts of mail or wire fraud, Plaintiffs likewise failed to establish a "pattern of racketeering activity." Alternatively, the alleged instances of mail and wire fraud are insufficient to prove a "pattern of racketeering" warranting RICO liability because "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement[.]"  *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242 (1989).  Rather, to prevail, "[a] party alleging a RICO violation [must] demonstrate continuity over a closed period by proving a series of related predicates *extending over a substantial period of time*."  *Id*. (emphasis added). Plaintiffs failed to do so here.  In fact, they presented no evidence suggesting a threat that this alleged "criminal conduct" will continue to occur in the future. Accordingly, Plaintiffs also failed to establish a pattern of racketeering activity as

required by § 1962(c).[4]

        d.    *Proximate Cause*

    Franklin argues also that it is due summary judgment on the § 1962(c) RICO claim because Plaintiffs failed to establish proximate causation. Doc. 78 at 19-20. "It is well-established that RICO plaintiffs must prove proximate causation in order to recover . . . [and that] causation principles generally applicable to tort liability must be considered applicable[.]" *Cox*, 17 F.3d at 1399 (internal citations and quotation marks omitted). "A proximate cause is not, however, the same thing as a sole cause. Instead, a factor is a proximate cause if it is a substantial factor in the sequence of responsible causation." *Id*. (quoting *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23-24 (2nd Cir. 1990) (internal quotation marks omitted).

    To establish proximate cause, Bradley asserts he paid the debt because he mistakenly believed that Franklin was a law firm. However, the evidence belies this contention. The record shows instead that after he received the first collection notice from Franklin, Bradley called Urology directly and Urology informed him

---

    [4] Since Plaintiffs failed to establish the existence of an enterprise or a pattern of racketeering activity, the court finds that they also failed to show that Franklin "conduct[ed] or participate[d], directly or indirectly, in the conduct of [the] enterprise's affairs" because such must be done "through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Accordingly, the court will not further address Franklin's alternative contention that it cannot be held liable under RICO because Plaintiffs failed to present evidence that Franklin conducted or participated in the affairs of the enterprise. Doc. 78 at 18-19.

that it had turned his account over to a "collection company."  Urology further

informed Bradley that even if he paid Urology the original amount, as Bradley

offered to do, he still owed the collection fee.  Doc. 61-8 at 7-8, 16; Doc. 61-2 at 9;

Doc. 67-3 at 4.  As a result, Bradley relayed that "I will just deal with [the]

*collection company* then."  Doc. 61-2 at 10 (emphasis added).  The evidence also

shows that Bradley understood that his Urology account was delinquent and was

turned over to a "collection agency."  *Id*. at 11.  Moreover, Bradley retained

counsel soon after receiving the first collection notice and subsequently paid

Franklin with a "reservation of rights" at the advise of counsel.  *Id*. at 14.  Based on

this evidence, even assuming Bradley was initially misled, it is clear that by the

time Bradley paid Franklin, he knew Franklin was a collection agency rather than a

law firm.  Put differently, the misrepresentation did not cause Bradley to pay or

lead to his alleged injury.  The court thus finds that Bradley failed to establish

proximate cause and Franklin's motion is due to be granted.

Calma likewise cannot establish that Franklin proximately caused his alleged

injury.  Calma asserts that he paid Franklin based on its "threats" of civil litigation.

However, after Franklin sent the first collection notice, Calma called Franklin and

stated: "I needed to pay [the debt] because I was trying to secure a home loan for

my – for my house and I didn't want them to turn this over to a credit bureau and it

affect my credit score and ultimately affect my chances of getting my home loan."
Doc. 79-6 at 26.  At no point did Calma express any concern over an alleged threat
of civil litigation.  Indeed, Calma authorized a postdated payment specifically to
prevent the debt from appearing on his credit report and "affect[ing] the [home]
loan."  *Id*.  The court thus finds that Calma also failed to establish proximate cause.

While they may be a partial cause for Plaintiffs alleged injuries, the evidence
taken in a light most favorable to Plaintiffs fails to establish that Franklin's
purported misrepresentations, regarding its status as a law firm and/or ability to file
suit, are "substantial factors" in the sequence of causation.  Plaintiffs also failed to
establish the existence of a RICO "enterprise" or that Franklin engaged in the
predicate acts of mail or wire fraud. Accordingly, Franklin's motion on the RICO §
1962(c) claim is **GRANTED**.

3.      § 1962(d) RICO Conspiracy

Plaintiffs assert that Franklin may still be liable for a RICO conspiracy[5] even
if it is not liable for the substantive RICO offense.  Doc. 94 at 28, citing *Jackson v.
BellSouth Telecommunications*, 372 F.3d 1250, 1269 (11th Cir. 2004).  As one

---

[5] "To establish a RICO conspiracy violation under 18 U.S.C. § 1962(d), the [plaintiff]
must prove that the defendants objectively manifested, through words or actions, an agreement to
participate in the conduct of the affairs of the enterprise through the commission of two or more
predicate crimes."  *US v. Starrett*, 55 F.3d at 1543.

court aptly stated in addressing a similar argument, "the plaintiffs' argument fails to acknowledge that what is required to support a claim of RICO conspiracy is that plaintiffs allege an illegal agreement to violate a substantive provision of the RICO statute." *Jackson*, 372 F.3d at 1269.  Put differently, "[i]f the underlying cause of action is not viable, the conspiracy claim *must* also fail." *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1199 (11th Cir. 2004) (emphasis added) (internal quotation marks and citation omitted).[6]  As discussed previously, the underlying § 1962(c) RICO claim fails because the evidence, viewed in a light most favorable to Plaintiffs, fails to establish the existence of an enterprise, a pattern of racketeering activity, or proximate causation for Plaintiffs' alleged injuries.  Since the underlying RICO claim is not viable, the RICO conspiracy claim also fails as a matter of law.

4.      § 2 Aiding and Abetting

Plaintiffs' final RICO claim is under 18 U.S.C. § 2, which provides that "[w]hoever commits an offense against the United States or aids, abets, counsels,

---

[6] Plaintiffs also cite to *U.S. v. Browne*, 505 F.3d 1229 (11th Cir. 2007), which states that "[a] a defendant may be guilty of conspiracy even if he did not commit the substantive acts that could constitute violations of § 1962(a), (b), or (c)." *Id*. at 1264.  This statement, however, presumes the establishment of a violation under one of the applicable RICO provisions.  Plaintiffs must still establish the existence of "substantive acts that could constitute violations" of RICO, *id*., before a defendant can be held liable for a RICO conspiracy.  Here, because no such violation is established, the conspiracy claim fails.

commands, induces or procures its commission" or "willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." *Id.* "To establish civil liability for aiding and abetting, the plaintiffs must show: (1) that the defendant was generally aware of the defendant's role as part of an overall improper activity at the time that he provides the assistance; and (2) that the defendant knowingly and substantially assisted the principal violation." *Cox*, 17 F.3d at 1410. However, "to be liable for aiding and abetting a crime, there must be an underlying crime to aid and abet." *Rogers v. Nacchio*, 241 Fed. Appx. 602, 609 (11th Cir. 2007).

The § 2 claim rests on Plaintiffs' contention that a jury question remains regarding whether Franklin "knowingly and substantially assisted." Doc. 94 at 30-31. In light of the court's finding that Plaintiffs failed to establish a "principal violation" or "overall improper activity" under RICO or that UAB West or Urology engaged in a "principal violation," the court finds that Plaintiffs failed to establish wrongful conduct for Franklin to have "aided and abetted."

For these reasons, the court **GRANTS** summary judgment on the RICO claims.

## B.  Fair Debt Collection Practices Act

Bradley alleges also that Franklin violated §§ 1692e(2)(A), 1692e(5),

1692e(10), 1692e(3), 1692e(14), and 1692f(1) of the FDCPA.[7]  The FDCPA aims,

in part, to "eliminate abusive debt collection practices by debt collectors[.]" 15

U.S.C. § 1692(e).  To achieve this purpose, the FDCPA prohibits debt collectors

from using "false, deceptive, or misleading representations or means" or "unfair or

unconscionable means" in connection with the collection or attempted collection of

any debt.  *Id*. at §§1692e, 1692f.  Bradley claims he is due summary judgment on

his FDCPA claims under §§ 1692c(2)(a), 1692f(1), and 1692e(14), and Franklin

claims it is due to prevail on all the FDCPA claims.  The court address both

contentions with respect to each alleged violation below.

    1.    <u>Claims Under § 1692e</u>

In analyzing Bradley's § 1692e claims, the court must "employ the 'least

sophisticated consumer' standard to evaluate whether a debt collector's

communication violates § 1692e of the FDCPA."  *LeBlanc*, 601 F.3d at 1193

(citations omitted).  "The least sophisticated consumer can be presumed to possess

a rudimentary amount of information about the world and a willingness to read a

collection notice with some care."  *Id*. at 1194.  This standard is an objective test

that "protect[s] naive consumers, . . . [but] also prevents liability for bizarre or

---

[7] Based on the complaint, Calma does not appear to raise claims under the FDCPA.
Instead, the FDCPA claims are alleged with reference to "Bradley and class members."  *See* doc.
1 at ¶ 65.

idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness." *Id*.

       a.     *§ 1692e(2)(A)*

A violation of § 1692e(2)(A) requires a plaintiff to show that the defendant made a "false representation of . . . the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Bradley asserts that Franklin misrepresented the "character and amount" of his debt by "representing that the original debt plus the mark-up fee was the original balance." Doc. 61 at 17. Bradley essentially alleges that Franklin violated § 1692e(2)(A) by failing to itemize the collection costs in the letters it sent Bradley.

It is undisputed that Bradley incurred a $861.96 bill from Urology, and that Bradley agreed "to pay all costs of collection." Doc. 61-2 at 5, 8, 35-36. It is also undisputed that Urology's agreement with Franklin stipulated that Urology would add 33 1/3% to its delinquent accounts prior to sending them to Franklin for collection. Doc. 61-3 at 16-17 and doc. 62-1 *SEALED* at 3-13. Consistent with this practice, Urology instructed Franklin to collect $1155.02 from Bradley, doc. 61-7 at 11, and confirmed this amount twice with Franklin *and* Bradley. Doc.61-8 at 6-7, 14-17; Doc. 61-2 at 9; Doc. 67-3 at 4. Based on this evidence, to the extent anyone misrepresented the debt, it was Urology. However, there was no

27

misrepresentation here of the amount Bradley *owed*.  While the $1155.02 exceeded the original bill, Bradley failed to present evidence that this amount "was a *false* representation of the total amount then due on the debt." *Sanchez v. United Collection Bureau, Inc.*, 649 F. Supp. 2d 1374, 1380 (N.D. Ga. 2009) (emphasis in original).  To the contrary, the amount Franklin conveyed was the actual amount Bradley owed based on Bradley's agreement to pay collection costs. Critically, Urology instructed Franklin to collect $1155.02 on its behalf pursuant to its agreement with Bradley.  In other words, Franklin's notices correctly stated the amount of Bradley's debt.  As such, Bradley failed to establish the falsity of the amount – an essential element of his claim.

The evidence likewise does not establish that Franklin misrepresented the character of Bradley's debt.  Although itemization allows the debtor to adequately investigate and verify the debt, despite Franklin's failure to itemize, Bradley was able to obtain the necessary information by calling Franklin and Urology.  In light of the agreement Bradley signed to pay collection costs and Bradley's knowledge that Urology sent his bill to a debt collector, the court disagrees with Bradley that Franklin's failure to itemize would mislead the least sophisticated consumer.  After all, Bradley knew the original amount he owed and could easily surmise that the rest of the amount Franklin sought consisted of the collection costs Bradley agreed

to pay.  Moreover, Bradley owed the entire amount, including the collection costs, and, as such, a failure to itemize in no way misrepresents the character of the debt. As the court in *Sanchez* held, when a plaintiff fails to show that the amount sought by the debt collector is false, there is no violation of § 1692e(2)(A) even if the debt collector fails to itemize the collection notice to differentiate collection fees from the original debt. 649 F. Supp. 2d at 1380.  This court agrees with the *Sanchez* court and finds that, in light of Bradley's failure to establish the falsity of the amount Franklin sought to collect, Bradley failed to establish an essential element of his claim.   Accordingly, the court **DENIES** Bradley's motion and **GRANTS** Franklin's motion on the § 1692e(2)(A) claim.

> b.    *§ 1692e(5)*

Bradley alleges that Franklin violated § 1692e(5) by sending him a letter stating "BEWARE, OUR CLIENT, PENDING NOTIFICATION, MAY AUTHORIZE A LAW FIRM TO FILE A CIVIL LAWSUIT AGAINST YOU."  Doc. 61-7 at 11; Doc. 61-2 at 8. Section 1692e(5) prohibits debt collectors from "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken."  15 U.S.C. § 1692e(5).  Critically, this section "does not require application of the [least sophisticated consumer] standard. . . . The sophistication, or lack thereof, of the consumer is irrelevant[.]"  *Jeter*, 760 F.2d at 1175.   To prevail under § 1692e(5),

Bradley must show that Franklin threatened to take an action that Franklin was not legally entitled to take or never intended to take.  15 U.S.C. § 1692e(5).  Bradley cannot make this showing.  Again, Franklin's agreement with Urology provided that Franklin could potentially seek a civil lawsuit with prior approval of Urology. In fact, Bradley's agreement with Urology placed Bradley on notice of potential lawsuits by stating "in the event it is necessary to employ an attorney to enforce any provision of this contract."  *See* doc. 61-2 at 5, 35.  Consequently, Franklin's statement that Urology "may authorize" a civil lawsuit to collect the debt was a true statement advising Bradley of one possible outcome.  *See LeBlanc*, 601 F.3d at 1196.  As such, Bradley cannot establish that Franklin made a threat it was not legally entitled to make.  Therefore, Franklin's motion on the § 1692e(5) claim is **GRANTED**.

> c.    *1692e(10)*

Bradley's claim under § 1692e(10) – which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" – is factually identical to his claim under § 1692e(5).  However, Bradley failed to address this issue in his response to Franklin's motion for summary judgment or in his own motion for summary judgment.  Therefore, the court  presumes that he concedes this claim.  *See* Fed. R.

Civ. P. 56(e).  Alternatively, Franklin's motion is **GRANTED** for the same reasons as the § 1692e(5) claim.

> d.     *1692e(3)*

Bradley alleges that the title "The Collection Firm of Franklin Collection Service, Inc." in Franklin's letterhead violates § 1692e(3), which prohibits debt collectors from falsely representing or implying that an "individual is an attorney or that a communication is from an attorney." 15 U.S.C. § 1692e(3).  Bradley's contention is unavailing because the least sophisticated consumer test "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness." *LeBlanc*, 601 F.3d at 1194.  Indeed, even "[t]he least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with care" and in its entirety.  *Id*.; *see also Campazano-Burgos*, 550 F.3d at 299. As the court discussed previously in section A(1)(b)(iv), the term "the collection firm" in Franklin's letterhead is not misleading when read in context with the rest of the letter, which plainly identifies the sender as "Franklin Collection Service, Inc.," instructed Bradley to make checks payable to "Franklin Collection Service, Inc.," and stated that the client may authorize "a law firm" to institute a lawsuit. Doc. 61-7 at 11; Doc 61-2 at 8.  Moreover, the term "firm" is not exclusive to the

31

legal profession and is used by many other businesses to describe a professional association.  *See In re Cheaves*, 439 B.R. at 227.  Based on these facts, especially the full text of the letter Franklin sent to Bradley, the court finds that Bradley failed to establish that Franklin falsely represented or implied that it was a law firm. Accordingly, Franklin's motion on this claim is **GRANTED**.

> e.     *1692e(14)*

Based also on Franklin's "collection firm" letterhead, Bradley alleges that Franklin violated § 1692e(14), which prohibits debt collectors from "us[ing] [] any business, company, or organization name other than the true name of the debt collector's business, company, or organization." 15 U.S.C. § 1692e(14).  Bradley asserts that Franklin violated this section as a matter of law because "The Collection Firm of Franklin Collection Service, Inc." is not Franklin's "full business name, the name under which it usually conducts business, a commonly used acronym, a trade name, nor a name under which it was licensed to do business."  Doc. 61 at 27-28.  To establish a violation of this section, Bradley must also show that the least sophisticated consumer would be misled by Franklin's alleged use of a false name.  *See Starsota v. MBNA America Bank, N.A.*, 244 F. App'x 939, 941 (11th Cir. 2007).  Again, as the court found with respect to the § 1692e(3) claim, based on the contents of the letter Bradley received, Bradley failed

to meet his burden of establishing that the term "collection firm" was misleading.
Moreover, "the cases in which a violation of § 1692e(14) have been found typically
involve a debt collector misrepresenting its identity, such as by purporting to be the
creditor when it is not, purporting to be a government agency when it is not, or
purporting to be distinct from the creditor when it is not." *Mahan v. Retrieval-
Masters Credit Bureau, Inc.*, 777 F. Supp. 2d 1293, 1300 (S.D. Ala. 2011).
Nothing in this record establishes that Franklin's letterhead, when read in context
with the actual letter, would mislead the least sophisticated consumer regarding the
true identity of the entity collecting the debt. Therefore, the court **DENIES**
Bradley's motion and **GRANTS** Franklin's motion.

>       2.      Claims Under § 1692f

Section 1692f prohibits unfair or unconscionable collection means, and
subsection (1) specifically prohibits "collection of any amount (including any
interest, fee, charge, or expense incidental to the principal obligation) unless such
amount is expressly authorized by the agreement creating the debt or permitted by
law." 18 U.S.C. § 1692f(1). In that regard, Bradley contends that the collection
fee he paid violates the FDCPA as a matter of law because the fee was actually
liquidated damages rather than the actual cost of collection and was unreasonable
because it was based on a percentage of his outstanding debt. *See* doc. 61 at 25.

The argument is unavailing because the costs of collection, which Bradley agreed to pay, fall within § 1692f's exception for amounts "expressly authorized by the agreement creating the debt."  Again, Bradley's agreement with Urology states that "[i]n the event of non-payment, either by insurance or myself, I agree to pay *all costs of collection*, including a reasonable attorney fee in the event it is necessary to employ an attorney to enforce any provision of this contract."  Doc. 61-2 at 5, 35.  Moreover, the evidence establishes that Urology actually paid Franklin $346.51 for its services, and that Bradley paid only $293.06 of that fee.  Doc. 61-3 at 27.  In other words, Bradley paid less "collection fees" than his agreement with Urology authorized.  Critically, Bradley does not allege that Urology breached its agreement with him by adding this allegedly unreasonable fee to the amount it asked Franklin to collect from Bradley.  *See* doc. 61-2 at 6.  Therefore, Bradley has failed to establish that Franklin violated § 1692f(1).

In sum, Bradley's motion for partial summary judgment is **DENIED** in its entirety and Franklin's motion is  **GRANTED** on all of Plaintiffs' FDCPA claims.

## C.   State Law Claims

In addition to their federal RICO and FDCPA claims, Plaintiffs also assert

claims under state law for unjust enrichment, civil conspiracy, and fraud.[8]

1.    Unjust Enrichment

"The doctrine of unjust enrichment is an old equitable remedy permitting the

court in equity and good conscience to disallow one to be unjustly enriched at the

expense of another." *Mantiply v. Mantiply*, 951 So. 2d 638, 654 (Ala. 2006)

(*quoting Avis Rent A Car Sys., Inc. v. Heilman*, 876 So. 2d 1111, 1123 (Ala.

2003)). "In order for a plaintiff to prevail on a claim of unjust enrichment, the

plaintiff must show that the defendant holds money which, in equity and good

conscience, belongs to the plaintiff or holds money which was improperly paid to

defendant because of mistake or fraud." *Id*. (internal quotation marks and citations

omitted). However, "it is . . . a complete defense to an unjust enrichment claim that

a defendant is not in possession of money that does not rightfully belong to it."

*White v. Microsoft Corp.*, 454 F. Supp. 2d 1118, 1135 (S.D. Ala. 2006); *see also*

*Dickinson v. Cosmos Broadcasting Co., Inc.*, 782 So. 2d 260, 266 (Ala. 2000).

As discussed previously, the evidence establishes that Franklin properly

collected debts Plaintiffs owed, which included collection fees expressly authorized

by the agreements that created the debts. With respect to Bradley then, Franklin is

---

[8] The court previously dismissed Plaintiffs claims for declaratory and injunctive relief, aiding and abetting, and Calma's claim for fraud. *See* docs. 19 and 20.

not "in possession of money that does not rightfully belong to it" and Bradley's unjust enrichment claim fails.  However, Franklin collected a $10 convenience fee from Calma for a telephone payment but failed to inform Calma that it would charge him this fee.  Doc. 79-6 at 57-58; Doc. 73-14 at 23.  While Franklin says the fee gave Calma the benefit of an immediate payment over the phone and allowed Franklin to pay for the costs associated with processing telephone payments, the law is clear that retention of a benefit is unjust if "(1) the donor of the benefit acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship." *Mantiply*, 951 So. 2d at 654-55.  In light of Franklin's failure to disclose the $10 fee, an issue of fact exists regarding whether Calma "acted under a mistake of fact or in misreliance" when he paid the fee or whether Franklin's failure to disclose the fee constitutes unconscionable conduct or fraud.  Accordingly, Franklin's motion is **GRANTED** with respect to Bradley but **DENIED** as to Calma.

    2.    <u>Fraud</u>

Bradley asserts also that Franklin is liable for fraud because Franklin "misrepresented the amount and character of the actual debt owed to Urology by masquerading the original debt plus the unreasonable mark up as the original debt."

36

Doc.94 at 32. "In order to prove fraud, the plaintiff must establish that there was a misrepresentation of a material fact, that it was made willfully to deceive or recklessly without knowledge, that it was justifiably relied upon, and that it thereby proximately caused damage to the plaintiff." *McLemore v. Ford Motor Co.*, 628 So. 2d 548, 550 (Ala. 1993).  Bradley failed to make the necessary showing. Again, Bradley's agreement with Urology expressly authorized Urology to charge a collection fee if Bradley failed to pay his bill.  Therefore, Franklin did not misrepresent the amount or character of Bradley's debt by including a collection fee or failing to itemize its statements, especially since Bradley had the ability to calculate the collection fee by subtracting the actual overdue bill he failed to pay from the total amount Franklin sought to collect.  Moreover, this alleged misrepresentation is not "material" because Bradley was already contractually obligated, through his agreement with Urology, to pay his debt – including "all costs of collection." *Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc.*, 611 So. 2d 238, 244 (Ala. 1992) ("A representation that causes a person to do nothing more than he was already contractually obligated to do before the representation was made is not material and therefore cannot support a fraud action").

Bradley's claim fails also because he unreasonably relied on this alleged

misrepresentation.  Bradley had reason to doubt the veracity of the representation and challenged it, which led to him learning that the debt included a collection fee before he actually paid the debt.  Therefore, to the extent Bradley felt the amount was incorrect, Bradley had full knowledge of the alleged falsity of the information before he paid the amount.  As such, he unreasonably relied on the alleged misrepresentation.  *See Patterson v. United Companies Lending Corp.*, 4 F. Supp. 2d 1349, 1354 (M.D. Ala. 1998) ("Where one has knowledge of the falsity of a representation or even reason to doubt the truth of a representation, however, reliance is not reasonable"); *Ramsay Health Care, Inc. v. Follmer*, 560 So. 2d 746, 748 (Ala. 1990) (finding that if a party is informed of the truth regarding a misrepresentation prior to acting, he may not reasonably act or rely on that representation).  Finally, Bradley failed to establish that he was damaged because he paid only the amount he was contractually obligated to pay, or that Franklin's alleged misrepresentation proximately caused his damage.  Therefore, the court finds that Bradley's fraud claim fails as a matter of law and Franklin's motion is **GRANTED**.

    3.    <u>Civil Conspiracy</u>

Finally, Plaintiffs assert a civil conspiracy claim against Franklin for allegedly contracting with Urology and UAB West to "add a mark-up to the

amounts of debts owed by Bradley and Calma" and then "send letters to the corresponding debtor with inflated, and excessive charges which were not explained to Bradley and Calma."  Doc. 94 at 37.  "Civil conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means." *Hooper v. Columbus Regional Healthcare System, Inc*., 956 So. 2d 1135, 1141 (Ala. 2006) (internal quotation marks and citations omitted).  Thus, Plaintiffs' claim is based on their contention that Franklin unlawfully collected collection fees from them.  As discussed previously, Plaintiffs failed to establish that Franklin unlawfully collected a collection fee given that they both agreed to pay such a fee.  Moreover, although a question of fact remains about whether Franklin was unjustly enriched in retaining the $10 convenience fee it collected from Calma, Calma presented no evidence that Franklin *conspired* with anyone to collect this fee.  As such, Franklin's motion on the civil conspiracy claims is **GRANTED**.

## IV.  <u>CONCLUSION</u>

In sum, Bradley's partial motion for summary judgment, doc. 61, is **DENIED** and, except for Calma's unjust enrichment claim, Franklin's motion for summary judgment, doc. 77, is **GRANTED**.

39

**DONE** this 28th day of March, 2013.


**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE